**Paul GREEN, Individually and for all others similarly situated, Plaintiff,**

v.

**William CAUTHEN, Individually and in his official capacity as Chief of Police of the Columbia, South Carolina, Police Department, et al., Defendants.**

Civ. A. No. 72–1410.

United States District Court, D. South Carolina, Columbia Division.

May 20, 1974.

Thomas D. Broadwater, H. Christopher Coates, Columbia, S. C., for plaintiff.

John K. Grisso, U. S. Atty., Wistar Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant William J. Hannon.

Daniel R. McLeod, State Atty. Gen., Joseph C. Coleman, Deputy Atty. Gen., Columbia, S. C., for defendants Carl Reasonover and Lee Thomas.

Roy D. Bates, Thomas E. Lydon, Jr., Columbia, S. C., for defendants William Cauthen, H. R. Chambers, R. E. Connell, C. S. Branham, Jr., J. L. Keefe, Graydon V. Olive, D. E. Foster, E. E.

Taylor, O. G. Donny, and Columbia City Police Department.

## ORDER

HEMPHILL, District Judge.

ON DEFENDANTS' MOTIONS TO DISMISS UNDER RULES 12(b) (6) and 12(b)(7); DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER RULE 56(b); AND PLAINTIFF'S MOTION FOR PRODUCTION OF EVIDENCE UNDER RULE 45(b).

Plaintiff, Paul Green, filed suit against the Chief and several officers of the Columbia, South Carolina, Police Department, the senior federal field representative for the Law Enforcement Assistance Administration, the Executive Director of the South Carolina Law Enforcement Assistance Program, the City Manager of the City of Columbia, the members of the Columbia, South Carolina, Civil Service Commission, and the Columbia City Police Department, alleging that actions of the Columbia Police in connection with the arrest of plaintiff on July 24, 1972, caused monetary damage to plaintiff and entitled him, and the class which he seeks to represent, to injunctive relief requiring the Columbia, South Carolina, Civil Service Commission to conduct screening and psychological testing of present and prospective police officers for racially biased attitudes and predispositions toward brutality and to discharge or refuse to hire any person who is found to be incapable of enforcing the laws fairly and indiscriminately in regard to plaintiff and the class which he seeks to represent, to tory injunction ordering the Chief of Police of the City of Columbia to inform other law enforcement agencies when an individual is discharged or refused employment by the police department because of said screening procedure or illegal activities toward plaintiff or his class. Plaintiff further seeks to have federal funds under the Law Enforcement Assistance Administration withheld until the court can be shown that a good faith attempt is being made to insure that officers of the police department do not participate in racially discriminatory acts. Plaintiff seeks to invoke jurisdiction of this court pursuant to 28 U.S.C. § 1343, this action being authorized by 42 U.S.C. § 1983, 1985, 1988, and 2000d. Plaintiff seeks monetary damages and other relief to redress the alleged deprivation, under color of the state law, custom or usage, of rights, privileges and immunities secured by the Constitution, particularly the privileges and immunities clause, Article IV, Section 2, the Fourth Amendment; the Sixth Amendment; the Eighth Amendment; and the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States. The pendent jurisdiction of this court is also invoked over plaintiff's claim against the defendants pursuant to the laws of South Carolina.

## PARTIES

Plaintiff is a black male, over the age of twenty-one years and is a resident and citizen of Richland County, South Carolina.

Defendant, William Cauthen, is a white male, a resident and citizen of Richland County, South Carolina, and at all times material to this action was allegedly acting under color and pretense of state law, custom and usage in his official capacity as chief of police of the Columbia, South Carolina, Police Department.

Defendants Chambers, Connell, Branham, and Keefe are white males, residents and citizens of Richland County, South Carolina, and at all times material to this action were allegedly acting under color and pretense of state law, custom and usage in their capacity as officers of the Columbia, South Carolina, Police Department.

Defendant Hannon, is a white male, a resident and citizen of Fulton County, Georgia, and makes weekly visits to Richland County, South Carolina, as part of his duties as senior field repre-

sentative over the State of South Carolina for the Law Enforcement Assistance Administration. Allegedly, defendant Hannon, at all times material to this action, continues to act in concert with defendants Cauthen, Reasonover, and/or Thomas, in his official capacity, while having the duty to supervise the use of federal monies allotted to various South Carolina law enforcement agencies under the Law Enforcement Assistance Administration (LEAA). One such agency is the Columbia, South Carolina, Police Department.

Defendant Reasonover is a white male, a resident and citizen of Kershaw County, South Carolina, and, allegedly, at all times material to this action acted in concert with defendants Hannon and Cauthen in his official capacity, as Executive Director of the South Carolina Law Enforcement Assistance Program (LEAP), having the duty to supervise the various South Carolina law enforcement agencies who are recipients of federal monies made available through the Law Enforcement Assistance Administration. One such agency is the Columbia, South Carolina, Police Department.

Defendant Thomas is a white male, a resident and citizen of Richland County, South Carolina, and is the present Executive Director of the South Carolina Law Enforcement Assistance Program, having assumed the position in November, 1972. It is claimed that Thomas has the duty of supervising the various South Carolina law enforcement agencies who are recipients of federal monies made available through the Law Enforcement Assistance Administration.

Defendant Olive is a white male, a resident and citizen of Richland County, South Carolina, and serves as the city manager for the City of Columbia, South Carolina. In this official capacity defendant Olive in conjunction with defendants Foster, Taylor and Donny allegedly has the authority to suspend and dismiss employees of said police department.

Defendants Foster, Taylor and Donny are white males, residents and citizens of Richland County, South Carolina, and make up the membership of the Columbia, South Carolina, Civil Service Commission. It is claimed defendants have the authority in conjunction with defendant Olive, to suspend or dismiss employees of the Columbia Police Department as well as the authority to prescribe testing to be administered to prospective employees of said department.[1]

Defendant Columbia City Police Department is a law enforcement agency of the City of Columbia, South Carolina, a municipal corporation.

### CLASS ACTION

This is a class action brought by plaintiff on his own behalf and on behalf of others similarly situated, pursuant to Rule 23(a) and (b)(2), Federal Rules of Civil Procedure. The class represented by plaintiff consists of all residents of the City of Columbia, County of Richland, State of South Carolina who are members of the black race. It is alleged that this class is so numerous that joinder of all members is impracticable; that there are questions of law and of fact common to the class; that the

1. Code of Laws of South Carolina, § 47–703. Examinations and certification of results.— The civil service commissioners shall, twice a year or oftener if they deem it necessary, under such rules and regulations as they may prescribe, hold examinations for the purpose of determining the qualifications of applicants for positions on the police force, in the fire department, in the health department in cities or more than ten thousand and less than twenty thousand inhabitants and of more than fifty thousand and less than one hundred thousand inhabitants or in any other special line of service in the city government which may be placed by the city council under civil service regulations. The examination for each line of service shall be practical, fairly testing the fitness of the persons examined to discharge efficiently the duties of the particular line of employment. The commissioners shall, as soon as practicable after each such examination, certify to the council the persons who have satisfactorily passed such examination, stating the order of excellence. But the commissioners shall not certify the name of, and may deny the examination to, any person as to whose honesty and integrity or general moral character they have not reasonably satisfied themselves by affirmative investigation.

claims of the representative plaintiff will fairly and adequately represent the interests of the class; that defendants have acted or refused to act on grounds generally applicable to plaintiff's class; that this failure has resulted in a pattern of racially motivated, illegal acts by members of the Columbia City Police Department toward plaintiff and his class; that there exists a clear and imminent danger that great and irreparable injury will continue to plaintiff's class if injunctive relief is not granted; that no adequate remedy at law exists which would protect plaintiff and his class from this irreparable harm; and that injunctive relief is therefore appropriate with respect to the class as a whole.

## BRIEF STATEMENT OF FACTS

From the pleadings it appears that on July 24, 1972, plaintiff was occupying the front seat of his automobile, legally parked along the 2100 block of Gervais Street in the City of Columbia, County of Richland, State of South Carolina. At approximately 10:15 p. m., defendant police officers Chambers, Connell, Branham, and Keefe approached the automobile, allegedly without any probable cause for arrest, and ordered plaintiff out of his car. Plaintiff claimed the officers proceeded to beat him about the face, head, chest, back, knees, and legs. Said defendants allegedly thereupon arrested plaintiff without probable cause, and had him incarcerated in the Columbia City jail. Thereafter, plaintiff claims in gross disregard for plaintiff's health, the police officers allowed plaintiff to remain in jail without medical attention for alleged injuries inflicted. Plaintiff remained in jail until July 26th when he stood trial in the Municipal Court of Columbia, South Carolina on charges of public drunkenness, disorderly conduct, and resisting arrest. At the trial, defendants Chambers, Connell, Branham, and Keefe testified that plaintiff was asleep in his car and was not disturbing anyone when said defendants effected the arrest. Upon such testimony, the Honorable Roy Powell, City Judge, dismissed all three charges against plaintiff on the basis that there existed no legal justification for making the arrest in question. In due time plaintiff instituted this action against the several defendants on various alleged causes of actions, the enumeration or discussion of which are not necessary to the decision here.

## MOTIONS

Several motions have been filed. A hearing was held on these motions on January 24, 1973. Briefs and proposed orders have been received with regard to each motion and have been forwarded to this court for its consideration. The court considers the following motions:

(1) Motion to dismiss amended complaint on behalf of defendants Cauthen, Chambers, Connell, Branham, Keefe, Olive, Foster, Taylor, Donny, and Columbia City Police Department;

(2) Motion to dismiss or for summary judgment on behalf of defendant Hannon;

(3) Motion for summary judgment on behalf of defendants Reasonover and Thomas;

(4) Plaintiff's motion for production of documentary evidence from records room of Richland Memorial Hospital;

(5) Plaintiff's motion for production of documentary evidence from Dr. Peggy L. Shealy:

(NOTE: The U. S. Government and the State of South Carolina have indicated that they do not oppose plaintiff's motions for production. Other defendants' proposed order in opposition to these two motions were attached to their motions for summary judgment.)

## FIRST MOTION

Defendants, William Cauthen, H. R. Chambers, R. E. Connell, C. S. Branham, Jr., J. L. Keefe, Graydon V. Olive, D. E. Foster, E. E. Taylor, O. G. Donny, and the Columbia City Police Department moved the court for an order dismissing

the amended complaint against said defendants pursuant to Rule 12(b)(6) on the following grounds:

1. The court lacks jurisdiction of the subject matter in that the allegations of the amended complaint fail to present a substantial federal question.

2. The court lacks jurisdiction under 28 U.S.C. § 1343 in that the allegations of the amended complaint amount to nothing more than a tort action for assault and battery for which there is a plain and adequate remedy under state law.

3. The amended complaint fails to state a claim against defendants on which relief can be granted on the basis that the facts alleged do not constitute a deprivation under color of state or municipal authority of any rights, privileges or immunities secured by the Constitution and laws of the United States as required by 42 U.S.C. § 1983.

4. The amended complaint fails to state a claim against defendants Cauthen, Hannon and Reasonover for damages pursuant to 42 U.S.C. § 1985(3) in that the facts alleged do not constitute a conspiracy under that section and fail to prove intentional and purposeful discrimination.

5. No jurisdiction is conferred by 42 U.S.C. § 1988 and its provisions are not relevant to any issues raised by the allegations of the amended complaint.

6. The court should abstain from asserting any jurisdiction of this matter under 42 U.S.C. § 2000d by reason of any alleged acts of these defendants in that the complaint contains no allegations that administrative procedures prescribed therein have been exhausted.

7. The amended complaint fails to state a claim against defendants on which the injunctive relief sought can be granted in that there is no demonstration of a clear and imminent danger of great and irreparable injury, nor is there proof of the existence of a psycho-

logical test that will accomplish the screening of prospective police employees that plaintiff desires. The injunctive relief sought in the amended complaint is punitive and disciplinary in effect and is not a proper ground for the equitable relief of an injunction.

8. The Columbia City Police Department is not a proper party to this action since it is not a person within the meaning of the Civil Rights Acts.

9. Plaintiff lacks standing to maintain this cause as a class action in that the matters complained of are purely personal to plaintiff.

1. *This court has jurisdiction over this action.*

 28 U.S.C. § 1343 is the jurisdictional statute for actions arising under both 42 U.S.C. § 1983 and § 1985. Sections 1983 and 1985 are two of the statutes relied on by plaintiff in bringing this action. Plaintiff has made allegations upon which at least one of either § 1983 or § 1985(3) actions can be based and accordingly, this court has jurisdiction.

 2. *The availability of a state remedy does not bar plaintiff from pursuing this remedy under § 1983.*

It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

In accord: Hayes v. Secretary of Department of Public Safety, 455 F.2d 798 (4th Cir. 1972); Liles v. South Carolina Department of Corrections, 414 F.2d 612 (4th Cir. 1969); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

3. *The amended complaint states a claim upon which relief may be granted under 42 U.S.C. § 1983.*[2]

---

2. 42 U.S.C. § 1983. Civil action for deprivation of rights.

Every person who, under color of any statute, ordinance, regulation, custom, or usage,

**A.** *Plaintiff can maintain an action for illegal arrest and detention under § 1983.*

Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) held that persons can maintain a § 1983 action for violation of rights secured them by the Fourteenth Amendment. The right to be free from an illegal arrest and detention by state officials is secured plaintiff by the Fourteenth Amendment. Cases which have allowed actions under § 1983 based upon illegal arrest and detentions are quite numerous. A few such cases are: Monroe v. Pape, supra; Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Nesmith v. Alford, 318 F.2d 110, reh den., 319 F.2d 859 (5th Cir. 1963), cert. denied, 375 U.S. 975, 84 S. Ct. 489, 11 L.Ed.2d 420 (1964); and Brooks v. Moss, 242 F.Supp. 531 (W.D. S.C.1965).

**B.** *Plaintiff can maintain an action under § 1983 for the failure of defendants to provide him medical attention while incarcerated.*

When a person is arrested and placed in confinement, he becomes entitled to medical attention if he is in need of it and failure to provide such has been held to be cruel and unusual punishment. Improper or negligent medical treatment by persons acting under color of state law has been held not to give rise to an action for damages under § 1983. Pennsylvania ex rel. Gatewood v. Hendricks, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S. 925, 87 S.Ct. 899, 17 L. Ed.2d 797. However, in this action plaintiff complains not of improper or negligently administered medical treatment but of no medical treatment at all. Such an allegation is actionable under § 1983. Corby v. Conboy, 457 F.2d 251 (2d Cir. 1972); Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957); Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961); and United States ex rel. Knight v. Ra-

gen, 337 F.2d 425 (7th Cir. 1964), cert. denied, 380 U.S. 985, 85 S.Ct. 1355, 14 L.Ed.2d 277.

**C.** *Plaintiff can maintain an action under § 1983 for the use of unreasonable and malicious force by defendants.*

In Jenkins v. Averett, 424 F.2d 1228, 1231 (4th Cir. 1970), the court in allowing recovery stated that "[t]he constitutional right to be free from unreasonable interference by police officers is uncontrovertible." In accord: Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963) and Brooks v. Moss, 242 F. Supp. 531 (W.D.S.C.1965). In this action plaintiff alleges that the arrest was illegal. A showing of legality concerning the arrest would be, however, no complete defense to this particular cause of action. Plaintiff has a federal right to be free from unnecessary force while being legally arrested, Morgan v. Labiak, 368 F.2d 338 (10th Cir. 1966) and Jackson v. Martin, 261 F.Supp. 902 (N.D. Miss.1966), and can maintain a § 1983 action on an allegation of unreasonable or unnecessary force in the effectuation of a legal arrest.

**D.** *Plaintiff can maintain an action under § 1983 on an allegation of negligent nonfeasance by defendants.*

In Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), it is stated that § 1983 ". . . should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." In regard to equal protection violations resulting as a natural consequence of defendants' acts or non-acts, see Hawkins v. Town of Shaw, Mississippi, 461 F.2d 1171 (5th Cir. 1972); Banks v. Perk, 341 F.Supp. 1175 (N.D. Ohio 1972); and Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970). In *Jenkins* the district court found the shooting of the plaintiff not to have been intention-

---

of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

al, but an act of gross negligence. The Fourth Circuit stated:

> [I]f intent is required [for recovery under § 1983], it may be supplied, for federal purposes, by gross and culpable negligence, just as it was supplied in the common law cause of action. Jenkins v. Averett, supra, at 1232.

In McCray v. State of Maryland, 456 F. 2d 1 (4th Cir. 1972), it was held that the negligent failure of a clerk of court, in not filing the necessary papers to allow plaintiff access to post-conviction relief, was actionable. "Preliminarily, we note that a section 1983 action may be based on negligence when it leads to a deprivation of rights." 456 F.2d at 5. It is important to note that in McCray, the alleged negligence was that of nonfeasance. In Hayes v. Secretary of Department of Public Safety, 455 F.2d 798 (4th Cir. 1972), plaintiff sought injunctive relief against defendants for their *inaction* in investigating charges of brutality and misconduct made by inmates against prison officials. In allowing the action under § 1983 the court went on to state:

> [I]t appears that plaintiff may have an additional cause of action under the Civil Rights Act of 1871 against the officials of Patuxent Institution to require that it be administered in such a manner as not to violate the right of those who are subjected to its treatment. 455 F.2d at 801.

Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), reversed on other grounds sub nom., District of Columbia, v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), held that a police captain and chief's negligent supervision of their subordinates to be actionable under § 1983. The Fourth Circuit relied heavily on the reasoning in the *Carter* decision in its holding in *McCray*. See also: Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969); United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971); Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972) for other decisions allowing § 1983 actions upon allegations of negligent nonfeasance.

If the city fathers give to a person a deadly weapon and a badge of authority to enforce the law, they should make sure that the persons receiving such awesome responsibility have the proper mental attitude about indiscriminate law enforcement.

4. *The facts alleged do not constitute a conspiracy under § 1985(3).*

See SECOND MOTION, Part 2, infra.

5. *42 U.S.C. § 1988 is not relied upon as a jurisdictional statute.*[3]

■ Since 28 U.S.C. § 1343 is plaintiff's jurisdictional statute, 42 U.S.C. § 1988 is not relied on for jurisdictional purposes. Section 1988 is relevant to this action because it grants this court the authority to look to state law as a supplement to federal law in the fashioning of suitable remedies. See Hesselgesser v. Reilly, 440 F.2d 901 (9th Cir. 1971).

6. *This court should abstain from asserting jurisdiction over plaintiff's claim under 42 U.S.C. § 2000d.*

---

3. 42 U.S.C. § 1988. Proceedings in vindication of civil rights.

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

See SECOND MOTION, Part 3, infra.

7. *The amended complaint states a claim against defendants on which injunctive relief can be granted.*

In their motion to dismiss, defendants stated three other reasons for dismissal.

■ First, they contend that the injunctive relief sought should not be granted because " . . . there is no demonstration of a clear and imminent danger of great and irreparable injury." To withstand a motion to dismiss at this stage of the pleadings, there does not have to be a demonstration but only an allegation of such danger. Plaintiff makes the requisite allegation.

■ Secondly, defendants contend that there is no " . . . proof of the existence of a psychological test that will accomplish the screening . . . plaintiff desires." Again, a motion to dismiss is not the correct point in the proceeding to object to plaintiff's lack of proof. Here again plaintiff has to have only alleged the existence of such a test to overcome a motion to dismiss. Plaintiff has done so.

■ Thirdly, defendants object to the injunctive relief sought on the grounds that it " . . . is punitive and disciplinary in effect. . . ." Given the broad remedial power of federal district courts in fashioning equitable relief thought necessary to protect constitutional rights in civil rights case, Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), the relief sought would not be an abuse of this court's discretion. In regard to remedial orders directed toward police departments, see Allen v. City of Mobile, 331 F.Supp. 1134 (S.D. Ala.1971); NAACP v. Allen, 340 F.Supp. 703 (M.D.Ala.1972), and Castro v. Beecher, 334 F.Supp. 930 (D.Mass. 1971).

8. *The police department is not a proper party to this action.*

■ The Columbia City Police Department is not a proper party to this action since it is not a "person" within the meaning of the Civil Rights Act. Nugent v. Sheppard, 318 F.Supp. 314 (N.D.Ind.1970).

9. *Plaintiff has standing to maintain this action as a representative of his class.*

■ The amended complaint seeks monetary damages that are personal to the plaintiff and injunctive relief that is related to the interests of all those persons in plaintiff's class and is not solely limited to plaintiff's personal interest.

■ Plaintiff who seeks to qualify himself as the representative of a class does not have automatic access to the federal courts via the class action vehicle. The burden is on plaintiff to show that he fulfills all four requirements of Rule 23(a). The four prerequisites of Rule 23(a) may be characterized as numerosity, commonality, typicality, and representativity:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

A. Numerosity.

Defendant contends that the existence of only one plaintiff in the proffered class causes this class action to fail for lack of numerosity. This contention, as to civil rights cases, must be rejected summarily. The Notes of the Advisory Committee on Rules, 28 U.S.C.A., Rule 23(b)(2), at 298, state:

Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to *one* or a few members of the class, provided it is based on grounds which have general application to the class. (Emphasis added).

Plaintiff represents a class made up of all black persons in the City of Col-

umbia, South Carolina, who come in personal contact with the detectives, officers, and employees of the city police department. Such a class is too numerous to allow joinder of all members.

In Hamer v. Campbell, 358 F.2d 215 (5th Cir. 1966), one black citizen who had been denied the right to register to vote brought a class action on behalf of all black voters. In Cypress v. Newport News Federal and Non-Sectarian Hospital Assn., 375 F.2d 648 (4th Cir. 1967), the court allowed two black physicians to bring the action for all black physicians wanting to apply for use of defendant's facilities.

B. Commonality

■ General practices and policies can constitute discrimination as much as or more than individual discrimination. This requirement of commonality is met by an "across the board" attack on defendants' practices, with the allegation of racial discrimination constituting a common question of fact to be resolved. See Carr v. Conoco Plastics, Inc., 423 F. 2d 57, 63 (5th Cir. 1970). Since plaintiff has made such an attack in this case, the commonality prerequisite is satisfied. The common questions of fact are: (1) whether there are members of the city police department whose racial prejudice render them incapable of fair and indiscriminate law enforcement in regard to members of the class and (2) whether said members' employment has resulted in a pattern of racially motivated police illegality directed toward members of the class. The common questions of law are: (1) whether such a pattern denies the members of the class equal protection of the laws and (2) whether this court should grant the injunctive relief sought if it finds such an equal protection violation. The fact that differing factual questions may arise out of separate instances of racially motivated police illegality can not defeat this class action for the requested injunctive relief. Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459.

The common issues need to be dispositive of the entire litigation. The fact that questions peculiar to each individual remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible. Dolgow v. Anderson, 43 F.R.D. 472, 490 (E.D.N. Y.1968).

C. Typicality

This prerequisite has been treated as synonymous either with the requirement of commonality, Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), or with the requirement of representativity, Moss v. Lane Co., 50 F.R.D. 122 (W.D.Va.1970). Some courts have ignored this prerequisite, Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968), or have reduced this prerequisite to a finding that there must be an absence of conflict of interest between representative plaintiffs and other members of the class, Weiss v. Tenney Corp., 47 F.R.D. 283, 290 (S.D. N.Y.1969). The effect of all these interpretations is to render "typicality" a term without a meaning of its own.

■ It is only common sense that "typicality" would not be established as a separate prerequisite in Rule 23(a)(3) if it was not intended to have an independent meaning. Unfortunately, the Notes of the Advisory Committee on Rules do not elaborate on the meaning any more than the statement contained in Rule 23(a)(3) itself. Perhaps the ordinary dictionary meaning of the term was intended by the Advisory Committee. In any event, this court adopts the interpretation given in White v. Gates Rubber Co., 53 F.R.D. 412, 415 (D.Colo. 1971):

A more reasonable reading of the requirement would seem to entail the necessity of demonstrating that there are other members of the class who have the same or similar grievances as the plaintiff. It seems apparent that a claim cannot be typical of the claims of the class if no other member of the class feels aggrieved. . . . In other words, the fact that hypothetical

claims would be similar is considered sufficient justification for finding the plaintiff's claim to be typical. (Citations omitted).

Hypothetical claims of other unnamed aggrieved members of the class would be similar to the allegations of the named plaintiff. Thus, it appears to the court that there is sufficient justification for finding plaintiff's claims to be "typical".

D. Representativity

■ Class representatives cannot qualify merely on the grounds of race alone. See Palmer v. Thompson, 391 F. 2d 324 (5th Cir. 1967).[4] The interests of the representatives of the class must be co-extensive with the interests of other members and groups within the class. There must be no possibility of any antagonistic interests since the allowance of a class representative with antagonistic interests to other members of the class would deny unnamed members of the class due process. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

This class action should not be dismissed on the basis that the lone plaintiff is incapable of representing his class.

A sufficient number of persons must take part as plaintiffs in a class action to insure a fair representative of the class. There is, however, no magic number. Conceivably a single plaintiff with competent counsel may afford better representation to the class than a great number of parties and a multitude of counsel. The quality of the representation is more important than numbers. . . . 2 Barron and Holtzoff, Federal Practice and Procedure, § 567 and § 305. See Hohmann v. Packard Instrument Company, 399 F.2d 711 (7th Cir. 1968).

Recent cases indicate that the quality of the representation is the essential question. Class Actions, 47 F.R.D. 169

(1969); Wright and Miller, Federal Practice and Procedure, § 1766, at 630.

In determining the quality of representation for the class, the adequacy of counsel and fairness of representation are the crucial factors. In other words, the representative party must be interested enough to be a forceful advocate, and his chosen attorney must be qualified, experienced, and generally able to conduct the litigation. Because of plaintiff's alleged experience with named defendants and the alleged physical injuries sustained, he has a sufficiently large economic stake in the proceedings to insure diligent and thorough prosecution of the action. Counsel for plaintiff has the resources and assistance to adequately represent plaintiff and his class.

E. General Applicability

■ An action may be maintained as a class action if the four prerequisites of Rule 23(a) are satisfied and one of the three situations stated in Rule 23(b) is shown to exist.

Plaintiff contends that the second of the three situations exist. Rule 23(b)(2) provides that a class action is maintainable if:

[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

The availability of class action treatment in proper circumstances in cases where racial discrimination is alleged is not questioned by defendants. In Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968), the court said: "Racial discrimination is by definition class discrimination." See also Brunson v. Board of Trustees of School District No. 1, Clarendon County, South Carolina, 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963); Green v. School

---

4. "What seems to be clear from the cases is (1) that the party must have been aggrieved and (2) that either he or the class of which

he is a member may be aggrieved . . . ." 391 F.2d at 328.

Board of Roanoke, Virginia, 304 F.2d 118 (4th Cir. 1962). These illustrative actions in the civil rights field make it clear that the complaints state a claim upon which relief can be granted in a class action under Rule 23(b)(2).

Defendants' alleged failure to select for employment by defendant police department only those persons capable of fair and indiscriminate law enforcement in regard to black persons is a failure whose results are generally applicable to the class.

## SECOND MOTION

The United States Attorney on behalf of defendant William J. Hannon, a federal official employed by the Law Enforcement Assistance Administration, moved the court for an order dismissing this action as to him, or, in the alternative, for an order granting summary judgment for this defendant on the following grounds:

1. The amended complaint fails to state a claim against this defendant upon which relief can be granted because he may properly invoke the sovereign immunity of the federal government.

2. The amended complaint fails to state a claim against defendants Cauthen, Hannon, and Reasonover for damages pursuant to 42 U.S.C. § 1985(3) in that the facts alleged do not constitute a conspiracy under that section and fail to prove intentional and purposeful discrimination.

3. The court should abstain from asserting any jurisdiction of this matter under 42 U.S.C. § 2000d by reason of any alleged acts of these defendants in that the complaint contains no allegations that administrative procedures prescribed therein have been exhausted.

4. The motion to dismiss must be granted for failure to join an indispensable party as required by Rule 19.

1. *Federal sovereign immunity protects this defendant from liability in this lawsuit.*

As to plaintiff's claim for money damages, the doctrine of sovereign immunity, as enunciated by the Supreme Court in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1334 (1959), applies. The Supreme Court held in that case that if a government official is acting "within the outer perimeter of [his] * * * line of duty", Id. at 575, 79 S.Ct. at 1341, there arises an absolute privilege of the official to be immune from suit "despite the fact that the official has a low rank in the executive hierarchy." Id. at 572–573, 79 S.Ct. at 1340.

The policy behind the rule of official immunity is that:

* * * [I]t is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. * * * In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * * Id. at 571–572, 79 S.Ct. at 1340, quoting Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949).

Cases have continued to hold that an official's actions are subject to the defense of official immunity, regardless of the officer's motives, if the actions are within the outer perimeter of his line of duty. See, for example, Gordon v. Adcock, 441 F.2d 261, 262 (9th Cir. 1971); Briscoe v. Kusper, 435 F.2d 1046, 1057–1058 (7th Cir. 1970); Ruderer v. Meyer, 413 F.2d 175 (8th Cir. 1969), cert. denied, 396 U.S. 936, 90 S.Ct. 280, 24 L. Ed.2d 235 (1969) (collecting cases).

See also, Scherer v. Brennan, 379 F.2d 609 (7th Cir. 1967), cert. denied, 389 U. S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666; Holmes v. Eddy, 341 F.2d 477 (4th Cir. 1965), cert. denied, 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 149; Keiser v. Hartman, 339 F.2d 597 (3d Cir. 1964), cert. denied, 381 U.S. 934, 85 S.Ct. 1764, 14 L.Ed.2d 699; Denman v. White, 316 F. 2d 524 (1st Cir. 1963); Bershad v. Wood, 290 F.2d 714 (9th Cir. 1961); Preble v. Johnson, 275 F.2d 275 (10th Cir. 1960); Taylor v. Glotfelty, 201 F.2d 51 (6th Cir. 1952); Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838 (D.C.Cir. 1947).

This doctrine has also been held to apply to cases involving the Civil Rights Act of 1871. Kletschka v. Driver, 411 F.2d 436, 440 (2d Cir. 1969); Skolnick v. Campbell, 398 F.2d 23, 27 (7th Cir. 1968); Toscano v. Oleson, 189 F.Supp. 118, 119 (S.D.Cal.1960); Koch v. Zuieback, 194 F.Supp. 651, 659 (S.D.Cal. 1961), aff'd, 316 F.2d 1 (9th Cir. 1963); cf. Hurlburt v. Graham, 323 F.2d 723, 725 (6th Cir. 1963); Bauers v. Heisel, 361 F.2d 581, 587 (3d Cir. 1966), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457.

Even malicious or overzealous action by a government official within the outer perimeter of his official duties is protected, although there is no evidence of such action by the named defendant in the present case. In Norton v. McShane, 332 F.2d 855 (5th Cir. 1964), cert. denied, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274, in which Barr v. Matteo, supra, was found to be controlling, the court stated at 861–862:

[W]e must assume that to the extent the defendants allegedly acted overzealously or maliciously, they were nevertheless acting within the outer perimeter of their line of duty, and the alleged acts had more or less connection with the general matters committed by law to their control and supervision. Moreover, we are of the opinion that the selection of a proper method of enforcing a court's orders in the face of active opposition and obstruction is a decision which it is necessary that these officers be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability.

As in Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959), defendant Hannon and his superior submit affidavits showing that the conduct plaintiff asserts to create his claim was part of Hannon's official duties, and defendant is therefore entitled to judgment on the basis of these affidavits, as was granted in Howard v. Lyons, supra. It is enough that the conduct was taken "by the defendant * * * as part of [his] official duties." Pagano v. Martin, 397 F.2d 620 (4th Cir. 1968), cert. denied, 393 U.S. 1022, 89 S.Ct. 628, 21 L.Ed.2d 565. Accord, Frost v. Stern, 298 F.Supp. 778 (D.S.C.1969), and the cases cited therein.

These principles entitle defendant not only to judgment, but equally apply to entitle defendant to be free from the burden of trial of plaintiff's assertions:

* * * The principle cuts deeper than a bare immunity from ultimate liability; the principle is one that halts at the threshold any judicial inquiry into the existence of private injury consequent upon the officer's act, even when it is alleged to have been a consciously wrongful act, where it appears that the alleged private wrong grew directly out of the defendant's functioning in his discretionary office. That is, precisely, the point of Gregoire v. Biddle, 2d Cir. 1949, 177 F.2d 579. The immunity is from inquiry not less than from liability . . . Babylon Milk and Cream Co. v. Rosenbush, 233 F.Supp. 735, 736 (E.D.N.Y.1964).

Either granting a motion to dismiss for failure to state a claim upon which relief can be granted; Gregoire v. Biddle, supra; Bershad v. Wood, supra; or granting a motion for summary judgment; Denman v. White, supra; Scherer v. Brennan, supra; Preble v. Johnson,

supra; is a proper method for the court to dispose of this suit. In S & S Logging Co. v. Barker, 366 F.2d 617 (9th Cir. 1966), the court held that where a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P., or in the alternative for summary judgment was granted by the trial court, the trial court's judgment dismissing the complaint with prejudice was correct because the trial court could properly have granted either branch of the motion.

Plaintiff cannot defeat the motion for summary judgment by filing an affidavit stating that the defendants' actions were not within the scope of their authority since the affidavit would not conform to the requirements of Rule 56(e) that affidavits be made on personal knowledge, set forth facts admissible in evidence, and show affiant's competency to testify as to the matter stated therein. Chafin v. Pratt, 358 F.2d 349, 354 (5th Cir. 1966), cert. denied, 385 U. S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105; Preble v. Johnson, supra.

It is clear from a reading of plaintiff's amended complaint that none of his allegations are sufficient to overcome this obstacle of official immunity. In fact twice in his complaint (paragraphs 3 and 15) plaintiff alleges that Hannon was acting in his official capacity. At most plaintiff's complaint, if taken as true, states that Hannon purposefully abused his position by willfully failing to eliminate from the police de-

partment those with racial prejudice. An even clearer abuse of official position than this was foreseen as being covered by the doctrine of official immunity. See Yaselli v. Goff, 12 F.2d 396 (2d Cir. 1926), aff'd, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, and discussed at length in Gregoire v. Biddle, supra. Thus, since the crux of plaintiff's complaint concerns Hannon's official duties, plaintiff has failed to state a claim upon which relief can be granted against defendant Hannon.

██ Plaintiff's main point in opposition to the defense of official immunity is that the acts in question did not involve any of defendant Hannon's discretionary functions, and therefore the immunity doctrine does not apply, citing McCray v. State of Maryland, 456 F.2d 1 (4th Cir. 1972), and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339 (2d Cir. 1972); or stated another way, acts committed in the performance of ministerial functions are not immunized, citing Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), reversed on other grounds sub nom., District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Even assuming, arguendo, the correctness of plaintiff's interpretation, it is quite clear that the alleged acts and omissions in question here, if committed at all by Hannon, were committed in the process of carrying out his discretionary duties. The job description [5] attached to Han-

---

5. Law Enforcement Program Specialist Position Description:

INTRODUCTION

This position is located in the Operations Division, regional office, Office of Criminal Justice Assistance, Law Enforcement Assistance Administration, and functions as a state representative with responsibility for instilling within his assigned geographical area an awareness of and interest in law enforcement programs, for providing assistance to planning agencies and state and local governments in the preparation of proposals, and, also performs in the area of grants management by the review and monitoring of proposed and funded programs.

DUTIES AND RESPONSIBILITIES

1. Establishes and maintains effective relationships with key state and local officials, state and local law enforcement officials, and State Planning Agencies to secure participation in law enforcement programs; to disseminate information concerning the programs; and, to create an interest in the programs. Renders technical advice and guidance in the development of new plans, programs, and projects; in improving methods and techniques in the area involved; in coordinating efforts of different jurisdictions and groups that at times have conflicting and overlapping objectives; in developing new resources and improved capabilities;

non's affidavit does not give him any ministerial duties to act in a certain way, but rather gives him general supervisory responsibilities, the discharge of which requires him to exercise judgment. Certainly, that judgment would be impaired if everyone who disagreed with the exercise thereof could bring a lawsuit based on such disagreement.

2. *No conspiracy is properly set out under 42 U.S.C. § 1985(3).*

 Plaintiff has failed to state a claim under 42 U.S.C. § 1985(3).[6] The conspiracy that Hannon is accused of taking part in—"to ensure that no steps were taken to eliminate [those] employees of said police department who

are incapable of indiscriminate law enforcement . . ."—is nebulous at best. In addition, no overt acts are alleged to have been committed in furtherance of this conspiracy. Rather, it is alleged, only non-acts were committed by Hannon and his alleged co-conspirators. Such unsupported conclusory statements are insufficient to survive a motion to dismiss. Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1971); French v. Corrigan, 432 F.2d 1211, 1213 (7th Cir. 1970), cert. denied, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814; Granville v. Hunt, 411 F.2d 9, 11 (5th Cir. 1969); Powell v. Workman's Compensation Board of New York, 327 F.2d 131,

---

and, in resolving problems that occur in implementing plans. Assistance takes the form of field visits and correspondence.

2. Reviews and monitors operations of plans under grants. Evaluates results of audits, program reviews, and other reports to determine needs for program improvement. Determines need to modify unreasonable requirements, to demand compliance with essential requirements, or to develop revisions leading to mutually acceptable plan or program.

3. Reviews applications of complex state plans such as those which consolidate programs sponsored by numerous local governments in the state involved, cover numerous diverse programs in each of the major functional areas, and include numerous novel plans and unprecedented programs in more than one specialized area. Proposals present difficulties in analysis because of the variety of complexity of programs presented by each of the component plans, by the complex inter-relationships posed by plans submitted by different localities, and by the · complex relationship to overall state plan.

4. Negotiates modifications in plans necessary to the approval of proposals when negotiations are particularly sensitive in nature, i. e., conflicting positions by participants are firmly held, conflicts exist in views of national, regional, and local priorities, doubts exist regarding the feasibility of new approaches and concepts.

5. Based on expertise gained from effective relationships with state and local planners and officials, advises the division director *on complex cases, recommending approval or disapproval of grant applications.*
CONTROLS OVER WORK
Serves under the general direction of the senior state representative who provides general policies and special instructions on

particular problem areas. Work is reviewed by observation of effectiveness of accomplishments, completeness, adequacy, and thorough studies of reports and papers submitted.

6. 42 U.S.C. § 1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties. Depriving persons of rights or privileges. (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

137 (2d Cir. 1964); Fletcher v. Hook, 446 F.2d 14, 16 (3d Cir. 1971). In actuality, the only specific act alleged by plaintiff in his amended complaint is that of four police officers illegally arresting him. From this, and the fact that he is black, plaintiff infers that the arrest was racially motivated and that therefore the policemen involved were incapable of indiscriminate law enforcement. And finally, from this he infers that the Chief of the Columbia City Police Department, the Executive Director of the South Carolina Law Enforcement Assistance Program, and Hannon have conspired not to eliminate such police officers from the force. The act of the illegal arrest does not by itself show the intentional and purposeful discrimination to the plaintiff or his class necessary to state a cause of action against the policemen's superiors. See Snowden v. Hughes, 321 U.S. 1, 7, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Norton v. McShane, 332 F.2d 855, 863 (5th Cir. 1964), cert. denied, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274; Hoffman v. Halden, 268 F.2d 280, 290 (9th Cir. 1959). Thus, the amended complaint does not show the necessary intent to discriminate on the part of Hannon. If the arrest is deemed to show the necessary intent for the policemen, that arrest cannot be used to show Hannon's intent. There are simply no facts alleged which support the inference that Hannon intentionally failed to keep the police force from being discriminatory.

■ 3. *Administrative procedures prescribed under 42 U.S.C. § 2000d have not been exhausted.*

As to plaintiff's prayer to enjoin defendants Hannon and Thomas from allotting any more LEAA funds to the Columbia City Police Department, he asserts that 42 U.S.C. § 2000d [7] would allow the injunction. The case of Green Street Association v. Daley, 373 F.2d 1, 9 (7th Cir. 1967), cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995, holds that such an injunction is not proper until the procedures established pursuant to 42 U.S.C. § 2000d–1 and § 2000d–2 have been completed. As may be seen from the affidavit of Herbert C. Rice, Director of the Office of Civil Rights Compliance of LEAA, an investigation which plaintiff is intending to "short circuit" by this action is still in progress. Excerpts [8] from this affidavit

---

7. 42 U.S.C. § 2000d. Prohibition against exclusion from participation in, denial of benefits of, and discrimination under Federally assisted programs on ground of race, color, or national origin.

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

8. Herbert C. Rice, being duly sworn, deposes and says:

I am the Director of the Office of Civil Rights Compliance of the Law Enforcement Assistance Administration (LEAA) of the United States Department of Justice.

The Office of Civil Rights Compliance is responsible for monitoring compliance with the Department of Justice-LEAA Equal Employment Opportunity Regulations, 28 CFR 42.201, et seq., subpart D, and the compliance of contractors in Federally funded construction as required by Executive Orders 11246 and 11375.

The Office of Civil Rights Compliance investigates complaints of discrimination in each of these areas, and also conducts compliance reviews to assure compliance with the civil rights laws and regulations.

On or about August 15, 1972, the office of Civil Rights Compliance received a letter from "Redfern II" alleging discrimination in the employment practices of the Columbia, South Carolina, Police Department, which letter also included allegations of police brutality. A copy of the letter was referred to the Criminal Section of the Civil Rights Division for their appropriate consideration as to the police brutality charges.

The investigation of the employment practices of the Columbia, South Carolina Police Department, conducted by my office, is still in process at the present time.

The civil rights laws and regulations and the Safe Streets Act of 1968, as amended, require that in all instances where noncompliance is found that attempts be made for voluntary compliance by the recipient. Should the efforts at voluntary compliance prove unsuccessful, the Office of Civil

show that any duty regarding the alleged discrimination of the Columbia City Police Department lies with Mr. Rice's office, not Mr. Hannon's, and that said duty is being discharged. This affidavit points out that the responsibilities plaintiff attributes to Hannon actually belong to Mr. Rice's office, and are being carried out in accordance with the pertinent laws. Plaintiff, in bringing this suit, is asking the court to interfere with the orderly process outlined in the affidavit, and to substitute its judgment for that of responsible Law Enforcement Assistance Administration officials.

4. *The motion to dismiss must be granted for failure to join an indispensable party as required by Rule 19.*

See THIRD MOTION, infra.

### THIRD MOTION

Defendants Carl Reasonover (former South Carolina Law Enforcement Assistance Program Director) and Lee Thomas (present South Carolina Law Enforcement Assistance Program Director) move for summary judgment in their favor on the ground that the allegations of the amended complaint do not constitute a cause of action against them, the facts supporting such ground being that the Director of the Law Enforcement Assistance Program for South Carolina has no authority with respect to the hiring practices of the Columbia City Police Department, nor any authority with respect to any official activity of the department—his authority with respect to that department being only to expend LEAP monies to that department in accordance with applications made by the department under federal law and approved by the South Carolina Law Enforcement Assistance Program Director in strict compliance with applicable laws of the United States.

*The motion to dismiss these defendants must be granted because defendants Hannon, Reasonover, and Thomas have no power over federal LEAA funds and the proper indispensable parties have not been joined.*

The Director of South Carolina Law Enforcement Assistance Program has the duty of allocating certain federal funds under the Law Enforcement Assistance Program to local police departments, and certain allocations of such funds have been made to the Columbia City Police Department. Such duties do not empower the defendants Thomas or Reasonover to direct the enforcement activities of that department. It is not alleged that Thomas or Reasonover had personal knowledge of the specific incident alleged involving the arrest of the plaintiff, nor that either of them had any personal connection with that incident.

Plaintiff alleges that the South Carolina Law Enforcement Assistance Program defendants Thomas and Reasonover, together with defendant Chief of Police Cauthen, have the duty of insuring that the activities of the members of the Columbia City Police Department do not discriminate against plaintiff and other blacks because of their race. No statutory authority is cited for this proposition. This court takes judicial notice that the South Carolina Law Enforcement Assistance Program defendants have no supervisory or administrative authority over the details of the operation of the Columbia City Police Department.

Even more in point, these defendants have no responsibility regarding the ethnic or racial composition of the Columbia, South Carolina, Police Department.

■ As to plaintiff's prayer to enjoin Hannon and Thomas (in the stead of his predecessor, Reasonover) from allotting any more federal funds to the

---

Rights Compliance refers the matter to the General Counsel of the Law Enforcement Assistance Administration with a recommendation that it be referred to the Department

of Justice for judicial enforcement or that administrative proceedings be instituted to suspend or terminate Federal financial assistance.

Columbia City Police Department, such relief cannot be granted against these defendants because they have no power over the allotment of funds. The statute, 42 U.S.C. § 3757,[9] gives the power of terminating grant funds only to the Administration, which is defined in 42 U.S.C. § 3711,[10] and does not include either a senior field representative (Hannon) or any state program directors (Thomas, or his predecessor, Reasonover). Since plaintiff has not brought before the court the parties that can accord him complete relief as required by Rule 19, his amended complaint against these defendants is subject to a motion to dismiss pursuant to Rule 12(b)(7).

## FOURTH MOTION

Plaintiff moved under Rule 45(b), Federal Rules of Civil Procedure, that this court issue a subpoena to Mr. Geanne Calhoun, Records Room Librarian, Richland Memorial Hospital, directing him to make available for inspection by plaintiff the medical records of defendant H. R. Chambers.

See FIFTH MOTION, infra.

## FIFTH MOTION

 Plaintiff moved under Rule 45(b), Federal Rules of Civil Procedure, that this court issue a subpoena to Doctor Peggie L. Shealy, Columbia, South Carolina, directing her to produce the results of the Minnesota Multiphasic Personality Inventory Test or any other psychiatric or psychological tests administered to defendants William Cauthen, C. S. Branham, Jr., H. R. Chambers, and R. E. Connell for inspection by plaintiff.

Defendants named above moved the court on behalf of Doctor Peggie L. Shealy to deny plaintiff's motion for the subpoena for the production of documentary evidence upon the following grounds:

1. There is no statement in the motion for subpoena as to the period of time to be covered by the documents described therein, it being unlimited as to time such that it is so broad and sweeping as to be unreasonable and oppressive.

2. There is no showing that the documents are material or relevant to the case concerned or that the evidence sought could have any possible bearing upon the issues of the case.

3. The documents sought are professionally privileged information which could not be admitted as evidence and therefore production of which could serve no useful purpose.

1. *The issuance of a subpoena would not work an unreasonable and oppressive hardship on defendants.*

The court takes note that defendants Chambers, Branham, and Connell admit having taken only one psychological or psychiatric test while in the employment of the Columbia City Police Department.

---

9. 42 U.S.C. § 3757. Withholding of payments for noncompliance with certain requirements; notice and hearing.

Whenever the Administration, after reasonable notice and opportunity for hearing to an applicant or a grantee under this chapter, finds that, with respect to any payments made or to be made under this chapter, there is a substantial failure to comply with—

(a) the provisions of this chapter;

(b) regulations promulgated by the Administration under this chapter; or

(c) a plan or application submitted in accordance with the provisions of this chapter;

the Administration shall notify such applicant or grantee that further payments shall not be made (or in its discretion that further payments shall not be made for activities in which there is such failure), until there is no longer such failure.

10. 42 U.S.C. § 3711. Law Enforcement Assistance Administration—Establishment; general authority of Attorney General over—Administration; membership; appointment.

(a) There is hereby established within the Department of Justice, under the general authority of the Attorney General, a Law Enforcement Assistance Administration (hereinafter referred to in this chapter as "Administration") composed of an Administrator of Law Enforcement Assistance and two Deputy Administrators of Law Enforcement Assistance, who shall be appointed by the President, by and with the advice and consent of the Senate.

(See said defendants' answer to plaintiff's interrogatory no. 6, filed February 9, 1973). Defendants Cauthen and Keefe deny they have taken any such tests. (See defendant Cauthen's answer to plaintiff's interrogatory no. 36, filed February 9, 1973 and defendant Keefe's answer to plaintiff's interrogatory no. 6, filed February 9, 1973). Therefore, the issuance of the subpoena would result in the production of only three test results. Such a requirement works no unreasonable or oppressive hardship on anyone.

2. *Said test results are material and relevant to the instant case.*

One of plaintiff's prayers for relief requests that this court order defendants to begin employing psychological testing and other means, in an effort to screen out those officers with racially biased attitudes and predispositions toward brutality. Whether the Minnesota Multiphasic Personality Inventory Test, as administered to defendants, in any way endeavors to ascertain racially prejudiced predispositions toward brutality, and if so to what extent, is obviously germane to this case. Moreover, if said test does in fact endeavor to measure racial prejudice or predispositions toward brutality, the results as to defendants would be relevant to plaintiff's investigation concerning his actions for illegal arrest and assault, for incarceration with failure to provide needed medical attention, and for negligent nonfeasance.

3. *The test results are not privileged communications.*

This court, in determining admissibility of evidence, has great latitude in choosing between the federal common law and the state rule, so as to choose that rule which favors admissibility. 5 Moore's Federal Practice ¶ 43.03, at 1326 (2d ed. 1971); Mourikas v. Vardianos, 169 F.2d 53 (4th Cir. 1948); United States v. 25.406 Acres of Land, etc., 172 F.2d 990 (4th Cir. 1949), cert. denied, 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738; United States v. Lykes Bros. Steamship Co., 432 F.2d 1076 (5th Cir. 1970). This court will follow the South Carolina rule, since it allows no privilege in this situation, and thus favors admissibility. See Peagler v. A. C. L. Ry. Co., 232 S.C. 274, 101 S.E.2d 821 (1958), a holding that states no physician-patient privilege exists in South Carolina. The court's research discovered no South Carolina case upon the question of psychologist-patient privilege; however, by analogy to *Peagler*, no such privilege exists in this state.

CONCLUSIONS

(1)(A) Motion to dismiss amended complaint on behalf of defendants Cauthen, Chambers, Connell, Branham, Keefe, Olive, Foster, Taylor, and Donny is denied.

(1)(B) Motion to dismiss amended complaint on behalf of defendant Columbia City Police Department is granted.

(2) Motion to dismiss and for summary judgment on behalf of defendant Hannon is granted.

(3) Motion for summary judgment on behalf of defendants Reasonover and Thomas is granted.

(4) Plaintiff's motion for production of documentary evidence from records room of Richland Memorial Hospital is granted.

(5) Plaintiff's motion for production of documentary evidence from Dr. Peggie L. Shealy is granted.

In order that there should be no question as to the effect of the court's ruling on the numerous grounds considered in the first, second, and third motions, plaintiff's prayers for relief in his amended complaint have been affected in the following manner:

A. Paragraph 16, seeking monetary relief for the assault upon plaintiff, brought against defendants Chambers, Connell, Branham, Keefe, Cauthen, Foster, Taylor, and Donny is allowed at this point in the pleadings;

B. Paragraph 17, seeking monetary relief for the conspiracy against plaintiff and his class, brought against defendants Hannon, Cauthen, and Reasonover is not allowed and is dismissed;

C. Paragraphs 18 through 22, seeking injunctive relief of various sorts, brought against defendants Cauthen, Olive, Foster, Taylor, and Donny is allowed at this point in the pleadings but as to defendant Columbia City Police Department is not allowed and is dismissed;

D. Paragraph 23, seeking injunctive relief from allowing any federal funds under LEAP to be allotted to the Columbia City Police Department, brought against defendants Hannon and Thomas is not allowed and is dismissed.

In accordance with the court's responsibility under provisions of 28 U.S.C. § 1292(b) this court, recognizing that this order, in part, is interlocutory in nature and not otherwise appealable, states that controlling questions of law exist as to the issues decided herein, as to which there is a substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of this litigation.

And it is so ordered.