**Edward SLEGESKI**

**v.**

**Albert G. ILG et al.**

**Civ. No. H–74–283.**

United States District Court,
D. Connecticut.

May 13, 1975.

Henry ·D. Marcus, Hartford, Conn., for plaintiff.

Vincent W. Oswecki, Jr., Windsor, Conn., Edmund T. Curran, Hartford, Conn., for defendants.

## RULING ON MOTIONS TO DISMISS

BLUMENFELD, District Judge.

This suit, another of an increasing number brought to the federal courts by a plaintiff who claims that his dismissal from government employment has been in violation of his constitutional rights, is brought by a former employee in the Windsor, Connecticut, police department who was fired during the period when he was serving as a probationary police officer. He alleges that his termination was without due process and brings this action under 42 U.S.C. §§ 1983,[1] 1985 (3), 1986 (1970).

During the six months' probationary period of Slegeski's employment he was accused of having a female traffic violator in his police cruiser in violation of departmental rules and of deliberate untruthfulness. He was afforded a hearing which resulted in his being cleared of both of these charges.[2] Nevertheless, he was dismissed for having exercised poor judgment, which was equated to a failure to meet a prescribed standard of work, viz., to satisfactorily perform the duties of a police officer.[3] Thereafter, the defendant Glass, the town's personnel officer, filed a separation notice with the state labor department stating as the reason for Slegeski's separation from employment: "Unsatisfactory performance during the probationary period." In the "remarks" section of the

---

1. 42 U.S.C. § 1983 (1970) provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. This is asserted by Slegeski in his amended complaint, and the record of his hearing reveals that the charge of having a female traffic violator in his cruiser in violation of department rules was explicitly dismissed. However, there was no explicit finding at the hearing that Slegeski was cleared of the charge of deliberate untruthfulness. The court is nevertheless satisfied that the hearing cleared his good name. Two charges were made; the dismissal of Slegeski was based on a third charge not previously enunciated, as explained immediately below in the text. From this pattern it may be concluded that neither of the two charges originally made was proven. In other words, Slegeski's amended complaint is correct in stating that he was cleared of both these charges.

3. See Letter of Eric Anderson, Assistant Town Manager, to Edward Slegeski, May 24, 1974.

notice Glass wrote: "Because of his conduct on 4/29/74, it was determined that [Slegeski] failed to meet the prescribed standards of work. The separation was with prejudice & the maximum penalty should apply." When Slegeski contested the penalty, which resulted in his temporary exclusion from state unemployment benefits,[4] the Town, per Glass, submitted a supplemental statement that outlined the charges that had been made against Slegeski and indicated that he had been dismissed for failure to meet prescribed standards of work (implicitly indicating that the charge of deliberate untruthfulness had been dropped, *cf.* note 2 *supra*).[5]

Slegeski has alleged that the defendants Glass, Darman, Ilg, and Anderson[6] thereafter told Slegeski's prospective and actual employers that he was "no good" and "unfit for any job, of lousy character and attitude."[7]

### I.

■ This case is presently before the court on the motions of the defendants, all officials of the Town of Windsor, to dismiss for failure to state a claim upon which relief may be granted, *see* Fed.R. Civ.P. 12(b)(6). Since matters outside the pleadings have been presented to and not excluded by the court, the motions will be treated as ones for summary judgment as provided in Rule 56. *See* Fed.R.Civ.P. 12(b).

### II.

■■ Two of Slegeski's contentions may be disposed of summarily. First, it is clear that no case has been made under § 1985(3).[8] Slegeski alleges a denial of due process, and § 1985(3) does not forbid conspiracies to deny due process. *See, e. g.,* Lewis v. Brautigam, 227 F.2d 124, 127–128 (5th Cir. 1955); Dunn v. Gazzola, 216 F.2d 709, 711 (1st Cir. 1954); Collins v. Bensinger, 374 F. Supp. 273, 277 (N.D.Ill.1974); Lombardi v. Peace, 259 F.Supp. 222, 225 (S.D. N.Y.1966). Moreover, Slegeski does not claim that he was the victim of any class-based discrimination, an omission that renders § 1985(3) inapplicable. *See* Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Nugent v. Guida, Civ.No. N–74–275 (D.Conn. Mar. 25, 1975). Second, it is clear that no case has been made under § 1986,[9] for that section ap-

---

4. Slegeski was denied five weeks of unemployment benefits under Conn.Gen.Stat.Ann. § 31–236 (Supp.1975), which provides in relevant part:

   "An individual shall be ineligible for [unemployment] benefits . . . [d]uring the week in which, in the opinion of the [labor commissioner], he has . . . been discharged or suspended for wilful misconduct in the course of his employment, and for the next four following weeks . . . . "

5. Whether or not it was proper for the state labor commissioner to determine, on the basis of this statement, that Slegeski had been discharged for "wilful misconduct in the course of his employment," Conn.Gen.Stat. Ann. § 31–236 (Supp.1975), is not a question before this court.

6. Ilg is the Windsor Town Manager, and Anderson is his assistant. Darman is the Chief of Police.

7. As the defendants have not filed any answer or other response to these allegations, they will be treated as admitted only for the purpose of the present motions.

8. 42 U.S.C. § 1985(3) (1970) provides:

   "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

9. 42 U.S.C. § 1986 (1970) provides:

   "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . . "

plies only when violations of § 1985 have been shown. *See* Johnston v. National Broadcasting Co., 356 F.Supp. 904, 909–910 (E.D.N.Y.1973); Post v. Payton, 323 F.Supp. 799, 802 (E.D.N.Y.1971). Thus only the § 1983 claims need be considered at any length.

### III.

In evaluating the claims of Slegeski under § 1983 the initial inquiry is whether the interests allegedly injured by his dismissal fall within the concepts of "property" or "liberty" protected by the due process clause of the fourteenth amendment. *See* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972). Slegeski contends (1) that his status as an employee constituted a sufficient property interest and (2) that the charges which accompanied his dismissal adversely implicated a sufficient liberty interest to merit protection under the Constitution.

### *The Property Interest*

There is no basis for plaintiff's contention that he had a property interest in his continued employment. In *Roth* the Court held that:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it . . . ."

408 U.S. at 577, 92 S.Ct. at 2709. In Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), the Court made clear that such a legitimate claim could be predicated on something other than a formal tenure contract; it could also be based upon "rules or mutually explicit understandings that support his claim of entitlement to the benefit."

In this case, there was neither a formal contract of tenure nor such mutually explicit understandings. The plaintiff was hired and was immediately placed upon probationary status for a period of six months. Section 8–4 of the Town of Windsor Personnel Rules states:

> "At any time during the probationary period, the department head may recommend in writing to the Town Manager, the removal of an employee, if in his opinion the working test indicates that such employee is unable or unwilling to perform the duties of the position satisfactorily or that his habits and dependability do not merit his continuance in the service. Such recommendation of the department head and the reasons therefor, shall be in writing to the Town Manager with a copy to the employee. No employee shall be removed from a position during his probationary period without the approval of the Town Manager . . . ."

During the probation period the department head, with the approval of the Town Manager, is given great discretion to dismiss an employee. There is no requirement that the dismissal be for cause. Thus, any expectation of continued employment that Slegeski might have had under the Windsor Personnel Rules could only be unilateral and subjective and thus not entitled to the protection of a due process hearing. *See* Calo v. Paine, 385 F.Supp. 1198 (D.Conn.1974), *appeal docketed*, No. 75–7028, 2d Cir., Jan. 7, 1975. "Where Executive discretion is not limited, there is no need for a hearing." Arnett v. Kennedy, 416 U.S. 134, 181, 94 S.Ct. 1633, 1657, 40 L.Ed.2d 15 (1974) (separate opinion of White, J.).[10]

10. The logic in the distinction between a right of the appointing power to remove a probationary employee at pleasure and the right to remove one who has acquired tenure only for cause and after a hearing is readily apparent. One of the major purposes of a probationary term of employment for a town policeman is to give the department an opportunity to evaluate the several facets of his work and conduct in the field and in the

## The Liberty Interest

Under the standards established in *Roth,* to show an interest protectible under the rubric of "liberty" a complainant must demonstrate that the reasons given for his dismissal would "seriously damage his standing and associations in his community" or foreclose "his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707.

Certainly the charge against Slegeski that he had a female traffic violator in his cruiser in violation of departmental rules cannot be regarded as resulting in injury to his "good name, reputation, honor, or integrity." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). The charge that he had been deliberately untruthful in the context of being questioned about this incident might be regarded as having "a clear, immediate and substantial impact on the employee's reputation which effectively destroys his ability to engage in his occupation," Tichon v. Harder, 438 F.2d 1396, 1402 (2d Cir. 1971). However, the plaintiff was afforded a hearing that resulted in his being cleared of both charges.[11] Thus the desideratum of the due process clause in this context—the clearing of one's good name, *see* Board of Regents v. Roth, 408 U.S. 564, 573 n.12, 92 S.Ct. 2701 (1972)—has here been achieved. Slegeski has no constitutional ground of complaint left with respect to the charges made against him on which he was afforded a hearing. The charge for which Slegeski was ultimately dismissed —"failure to meet prescribed standards of work"—did not implicate any liberty interest and did not, therefore, require

that Slegeski be afforded a hearing in order to provide due process protection. Ergo, this court need not examine the hearing which was provided Slegeski to determine whether it conformed to due process standards in all respects.

It follows that Slegeski's rights have not been violated by the communications by defendant Glass to the state labor department which simply described the events related above. *Cf.* Calo v. Paine, .385 F.Supp. 1198 (D.Conn.1974), *appeal docketed,* No. 75-7028, 2d Cir., Jan. 7, 1975.

### IV.

The remaining claim of the plaintiff is that subsequent to his dismissal the defendants Glass, Darman, Ilg, and Anderson told prospective and actual employers that he was "no good" and "unfit for any job, of lousy character and attitude."

Section 1983 creates a cause of action for the deprivation of federal constitutional rights which may be brought in the federal courts without regard to the amount in controversy.[12] It does not create a federal remedy for ordinary state law claims; federal law is not violated by defamatory statements. If the derogatory statements alleged may be construed as defamatory, the plaintiff has stated an ordinary state law tort claim.

The line of demarcation between state tort claims and federal constitutional claims is sometimes difficult to draw. In this case there were statements allegedly made that concern Slegeski's "good name, reputation, honor, or integrity," Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); they were made by state

---

department to determine whether he merits tenure. *Cf.* Drown v. Portsmouth School Dist., 435 F.2d 1182, 1184 (1st Cir. 1970), cert. denied, 402 U.S. 972, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971).

11. In view of the favorable outcome of the hearing it is paradoxical that one of the complaints advanced by the plaintiff is that the hearing officer should have been disqualified for bias.

12. 28 U.S.C. § 1343(3), (4) (1970).

officials; they may be defamatory under state law. Because § 1983 protects against the denial of federal constitutional rights by state officials, it may seem simple to assume that Slegeski should be able to protect his "liberty interest" in this court.[13] But that does not automatically follow.

■ The special concept of the § 1983 cause of action for (1) deprivation of rights secured by the Constitution or federal laws, (2) by a person acting under color of state law would be distorted beyond its purpose if it were held to encompass every case of defamation by a state officer.[14] Not all such injuries are of the kind "which only a state official can cause and against which the Constitution provides protection," Monroe v. Pape, 365 U.S. 167, 196 n.5, 81 S.Ct. 473, 489, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring). In this case, for instance, the statements allegedly made after Slegeski's dismissal by defendants Glass, Darman, Ilg, and Anderson were not made part of any official record or even, so far as is alleged in the complaint, reduced to writing. These statements, although allegedly made by state officials, were not "official." They cannot be considered as an instance of "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), *quoted in* Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In all of the Supreme Court cases in which the constitutional right to a hearing has been found, the state action has been "official." *See, e. g.,* Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (official listing of public drunks); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972) (refusal to renew teacher's contract). In this case, on the other hand, the alleged statements were entirely informal; the fact that those who allegedly uttered them were state officials was fortuitous.

In other cases, where the respective boundaries of the constitutional right to due process and the right to relief for defamation have been considered, the courts have sharply differentiated between the federal claim under § 1983 and the state law claim. Thus, as stated by Judge Miles W. Lord in Morey v. Independent School Dist., 312 F.Supp. 1257, 1262 (D.Minn.1969), aff'd, 429 F. 2d 428 (8th Cir. 1970):

"Damages for defamation are not recoverable under the Civil Rights Act because a defamed person has not been deprived of any rights, privileges, or immunities secured to him by the Constitution or laws of the United States, e. g., Johnson v. Hackett, 284 F.Supp. 933 (E.D.Pa.1968); Hopkins v. Wasson, 227 F.Supp. 278 (E.D. Tenn.1962)."

*See* Rosenberg v. Martin, 478 F.2d 520, 524 n. 4 (2d Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); Heller v. Roberts, 386 F.2d 832 (2d Cir. 1967); El-Em Band of Pomo Indians v.

13. Slegeski has asked for damages here. This is a proper remedy under state defamation law, but no federal court has held that there is a constitutional right to damages for statements that invade one's liberty interest. Were Slegeski found to have a federal due process right here, it would be limited to a hearing that measured up to constitutional standards. *See, e. g.,* Board of Regents v. Roth, 408 U.S. 564, 573 n.12, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

14. "[A] deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right. This view [is] by no means unrealistic as a common-sense matter . . . ." Monroe v. Pape, 365 U.S. 167, 196, 81 S.Ct. at 488 (1961) (Harlan, J., concurring).

49th Dist. Agric. Fair Ass'n, 359 F. Supp. 1044, 1046 (N.D.Cal.1973).

Standing alone—unrelated to the earlier dismissal proceedings—these subsequent statements by the defendants are insufficient to state a claim upon which relief may be granted under § 1983. The tenuous federal gloss suggested by the invocation of § 1983 in this type of case is not sufficient to permit a plaintiff to add to the burdens of the federal courts by requiring them to entertain suits which should be litigated in the state courts. *Cf.* Kavit v. A. L. Stamm & Co., 491 F.2d 1176 (2d Cir. 1974).

## V.

There is no genuine issue of fact relevant to my conclusion that this case fails to state a § 1983 claim upon which relief can be granted. The federal ground of the complaint must therefore be dismissed.

Furthermore, the patent unsubstantiality of the federal claim and the tenuous relationship of it to the state claim persuades me not to exercise the court's discretion to entertain pendent jurisdiction over the state defamation claim. Instead I heed the admonition of Judge Friendly in Kavit v. A. L. Stamm & Co., 491 F.2d 1176, 1180 (2d Cir. 1974) (footnotes omitted):

"If it appears that the federal claims are subject to dismissal under F.R. Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances. Indeed, this is essential to avoid a result where, as has been happily said, 'the dog would be wagged by his tail.' Hart & Wechsler, The Federal Courts and The Federal System 925 (2d ed. 1973)."

Accordingly, this case is dismissed. It is so ordered.