**Timothy Daryl ATKINS, Plaintiff,**

v.

**John Gibson LANNING et al.,
Defendants.**

**No. 75–C–458–C.**

United States District Court,
N. D. Oklahoma.

May 28, 1976.

Michael L. Fought, Bartlesville, Okl., for plaintiff.

Gatra Marvin and Irvine E. Ungerman, Tulsa, Okl., for defendants.

### ORDER

COOK, District Judge.

The Court has before it for determination a Motion for Summary Judgment by the defendants herein.

Plaintiff's Complaint alleges that the defendant, John Gibson Lanning, District Attorney for Washington County, State of Oklahoma, during the period from June 26, 1975, through August 20, 1975, acting in concert jointly and severally with the defendants, Kenneth D. Fouts, an investigator for the Washington County District Attorney's Office, and Randall Craig Ruark, an undercover agent employed by the Washington County District Attorney's Office, did under color of law conspire to unlawfully charge the plaintiff with a felony crime and caused him to be arrested, confined and imprisoned for 33 days before charges were dismissed.

Plaintiff states in the Complaint that the action arises under the Fourteenth Amendment, 42 U.S.C. § 1983 and 42 U.S.C. § 1985. In the section of the Complaint entitled "Cause of Action" plaintiff makes specific allegations in regard to the conduct of each defendant and only specifies that such conduct is in violation of 42 U.S.C. § 1983. No reference is made to the Fourteenth Amendment or 42 U.S.C. § 1985.

In their Motion for Summary Judgment defendants contend plaintiff has failed to state a cause of action pursuant to 42 U.S.C. § 1985. Section 1985 provides in pertinent part for safeguarding the equal protection of the laws or of equal privileges and immunities under the laws. As stated in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971):

"The language requiring intent to *deprive* of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

Title 42 U.S.C. § 1985(3) reaches conspiracy to deprive one of rights only when the object thereof is deprivation of equality and does not cover conspiracies to deny due process. *Slegeski v. Ilg,* 395 F.Supp. 1253 (D.C.Conn.1975); *Collins v. Bensinger,* 374

F.Supp. 273 (D.C.Ill.1974); *Lewis v. Brautigam,* 227 F.2d 124 (5th Cir. 1955).

In *Daly v. Pedersen,* 278 F.Supp. 88 (D.Minn.1967) the plaintiff alleged he was unlawfully and maliciously arrested based on parking violations. The court dismissed the complaint, stating that "a conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals." In dismissing the complaint of an individual who alleged a conspiracy to secure a conviction by the knowing use of perjured testimony, the court in *Mitchell v. Greenough,* 100 F.2d 184 (9th Cir. 1938), rehearing denied 100 F.2d 1006, cert. denied 306 U.S. 659, 59 S.Ct. 788, 83 L.Ed. 1056, observed:

> "Appellant was subject to no greater hazard than any other individual in the state, namely, the hazard of being prosecuted for a crime and convicted by false testimony."

▮ Plaintiff in the case at bar has failed to allege that there was some racial or other class-based invidiously discriminatory animus behind the actions of the defendants. It is therefore the determination of the Court that defendants' Motion for Summary Judgment in regard to Title 42 U.S.C. § 1985 should be and hereby is sustained.

▮, ▮ The defendants also contend that plaintiff has failed to state a cause of action in regard to Title 42 U.S.C. § 1983. The Court finds without merit defendants' contention that defendants' conduct was not under "color of law." Clearly the District Attorney and those on his staff were acting under "color of law" when, based upon their investigation, they caused an arrest warrant to be issued against the plaintiff. An officer or employee of a State or one of the political subdivisions thereof will be deemed to be acting under "color of law" as to those deprivations of rights committed in the fulfillment of the tasks and obligations assigned to him. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Furthermore, misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the

authority of the state, is action taken "under color of law." *Stringer v. Dilger,* 313 F.2d 536 (10th Cir. 1963). The Supreme Court has said: "Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

An examination of the factual allegations is warranted in the case at bar in order to determine whether a cause of action is stated and the applicable immunities, if any, as to each defendant.

Plaintiff alleges as factual basis for the action, that Ruark was hired by District Attorney Lanning as a paid operative on salary from the Office of the District Attorney, and Fouts was a special investigator on the District Attorney's staff. Plaintiff further states that Fouts and Ruark conducted a probe of Washington County contraband sales with Fouts directing the operation and Lanning having overall supervision. It is alleged that on June 26, 1975, Ruark purchased marijuana from a person who gave his name as "Adkins" or "Atkins," and that based thereon, Ruark and Fouts, without probable cause and without further investigation determined to charge the plaintiff Timothy Daryl Atkins, with the crime of distributing marijuana. Fouts and Ruark discussed the investigation and supposed sale of marijuana by the plaintiff with District Attorney Lanning in his position as overall supervisory director of the investigation. District Attorney Lanning thereafter filed an information verified by Fouts and citing Ruark as the purchaser of the drugs, which resulted in a bench warrant being issued for the plaintiff. As a result thereof, plaintiff was arrested by Donald Stockton of the Bartlesville Police Force and incarcerated for 33 days.

In regard to defendant Stockton plaintiff states:

> "Subsequent to the filing of the Complaint defendants have admitted in their pre-trial statement that the plaintiff Timothy Atkins, was the individual upon whom the arrest warrant was meant to

be served. Therefore, it would appear, that Donald Stockton is immune from liability in this action and the plaintiff would move that he be stricken under said circumstances, from the list of defendants."

The Motion for Summary Judgment of Donald Stockton is, therefore, sustained.

■ In regard to defendant Lanning, the Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L.W. 4251 (1976) recently addressed the question of whether a state prosecuting attorney acting within the scope of his duties in pursuing criminal prosecutions is absolutely immune from a civil suit for damages under § 1983. The Court stated:

"We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious [and] dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."

Plaintiff points out that in *Imbler* the Supreme Court noted that the Court of Appeals focused upon the functional nature of the activities rather than the prosecutor's status, leaving standing those cases in its circuit and some others which hold that a prosecutor engaged in certain investigatory activities enjoys not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's. The Supreme Court stated:

"We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."

Plaintiff relies heavily on *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973) cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471, in which the court concluded

that the prosecutor was not acting in a "quasi-judicial" role but rather in an investigative role in the planning and execution of a raid that led to the death of alleged Chicago Black Panther leader Fred Hampton. In *Hampton*, the alleged civil rights violation arose out of the prosecutor's conduct as an investigator. In the case at bar, however, the investigation itself did not violate plaintiff's constitutional rights, but rather the violation, if any, was the bringing of a criminal charge without probable cause. The filing of an information by a prosecutor certainly comes within his quasi-judicial role for which the Supreme Court has provided absolute immunity. If the prosecutor were faced with the prospect of civil liability whenever he authorizes prosecution, the prosecutor would bring few charges and justice would not be served. It is therefore the determination of the Court that the Motion for Summary Judgment of defendant John Lanning should be and hereby is sustained.

Defendants Fouts and Ruark contend that they should also be afforded absolute immunity. It is clear from an examination of the cases dealing with absolute immunity, however, that it is narrowly applied. The courts have considered whether absolute immunity should be afforded high officials of the Justice Department and rejected it. *Apton v. Wilson*, 165 U.S.App.D.C. 22, 506 F.2d 83 (1974). Likewise absolute immunity was not afforded the Governor of Ohio, the Adjutant General and various members of the Ohio National Guard. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). An extension of absolute immunity to a prosecutor's investigative staff would permit too great an area for abuse. Carrying this extension to an extreme, if absolute immunity were accorded to a district attorney's staff, in theory he could put the entire police force on salary and thereby create absolute immunity for the whole force.

The Court must, therefore, determine whether the alleged facts give rise to a § 1983 cause of action against defendants Ruark and Fouts. Plaintiff alleges that

"defendants Lanning, Fouts and Ruark did conspire to charge him with the crime of delivery of marihuana without probable cause." It would appear from this allegation that plaintiff is, in effect, charging the defendants Lanning, Ruark, and Fouts with malicious prosecution in causing criminal charges to be brought against the plaintiff without probable cause. The courts have not frequently been faced with the allegation of a § 1983 cause of action based upon malicious prosecution. However, according to C. Antieau, Federal Civil Rights Acts § 56 (1971):

> "A person has the right to be free from malicious prosecution by others acting under 'color of law,' and defendants violating this right are liable in actions under 42 U.S.C. § 1983."

In *Muller v. Wachtel,* 345 F.Supp. 160 (S.D. N.Y.1972) the court overruled defendants' motion to dismiss a § 1983 action against New York State Police investigators stating:

> "Plaintiff specifically alleges that defendants, under color of state law, intentionally conspired to, and did, deprive him of his constitutional rights to due process and to be free from unlawful arrest and malicious prosecution by arresting him and instituting criminal proceedings against him for the crime of grand larceny maliciously and without probable cause. Consequently, defendants' motion to dismiss for lack of subject matter jurisdiction is denied."

The court in *Nesmith v. Alford,* 318 F.2d 110 (5 Cir. 1963) touched upon the subject in an action for false imprisonment and malicious prosecution based upon the law of the State of Alabama and brought in the federal court pursuant to 28 U.S.C. § 1332 and also for conspiracy to deprive plaintiffs of their constitutional rights pursuant to 42 U.S.C. § 1983. The court stated:

> "[T]he commencement and prosecution of unfounded criminal prosecution might under certain circumstances constitute, not only malicious prosecution under the state law but a violation of Civil Rights as well. Since the matter is not directly before us, we ought not to explore fully what those facts must be or what legal principles will be finally controlling. . . . [S]ince we are dealing here with rights protected either by federal statute or the Constitution, there is no purpose to make every state criminal prosecution which ends in an acquittal automatically a violation of Federal Civil Rights Statutes. There must be something more. And the added elements may well partake substantially of traditional general tort law to bring in elements akin to want of probable cause, or malice, or both. If that is so, then the federal claim may turn at times upon personal motivation and certainly the conduct of the particular officer-defendant as the actor. The trial Court must therefore take pains that all of these issues are appropriately submitted."

■ While in certain circumstances, therefore, conduct amounting to malicious prosecution may give rise to a cause of action under § 1983, not all conduct which might amount to a state-defined tort of malicious prosecution would necessarily amount to a denial of due process under the Fourteenth Amendment actionable under § 1983. The Supreme Court in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4339 (1976), in holding that plaintiff failed to state a cause of action against a police chief under § 1983 for what would amount to a charge of libel pursuant to state law, stated:

> "Respondent's construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent."

The Supreme Court cited the leading case of *Screws v. United States,* supra, in which

the Court considered the proper application of the criminal counterpart of § 1983, likewise intended by Congress to enforce the guarantees of the Fourteenth Amendment. Quoting from *Screws,* the Court stated:

"Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States."

The Tenth Circuit in *Wells v. Ward,* 470 F.2d 1185 (10th Cir. 1972) discussed the relationship of a common law cause of action arising under state substantive law as compared to a cause of action under § 1983. The Court stated:

"The cases recognize that evaluations of rights and duties under § 1983, supra, arising as they do under the Fourteenth Amendment to the Constitution of the United States, are often different from counterpart common law actions which arise under state substantive law. This is not to say that at times the same set of facts will not give rise to remedies under both § 1983 and the state law of torts. The differences are though in terms of not only the requisite elements under § 1983, but also in the gravity of the right which has been invaded."

■ The vindication of federal rights under 42 U.S.C. § 1983 is determinable by federal law. *Diamond v. Marland,* 395 F.Supp. 432 (D.C.Ga.1975). This Court is not, therefore, limited to consideration of the elements of malicious prosecution as established by a particular state court. However, since the elements of a § 1983 cause of action based upon allegations of malicious prosecution have not been federally established, the Court will consider state law. According to the law of the State of Oklahoma, the elements entering into and necessary to be shown in a suit for malicious prosecution are that a prosecution was commenced against the plaintiff, that the prosecution was malicious and was instituted or instigated by defendant, that the prosecution was without probable cause and that the prosecution was legally and finally terminated in plaintiff's favor. *Park v. Security Bank & Trust Co.,* 512 P.2d 113 (Okl.1973). See also *Lewis v. Crystal Gas Co.,* 532 P.2d 431 (Okl.1975).

■ In the case at bar, plaintiff does not allege that defendants *maliciously* caused charges to be brought without probable cause. The court recognizes that in certain states, such as Oklahoma, malice in instituting a criminal proceeding may be inferred or implied in actions for malicious prosecution where proof shows want of probable cause. *Moore v. York,* 371 P.2d 469 (Okl. 1962). While Oklahoma allows this inference, it is merely an inference and does not amount to an irrebuttable presumption. In the case at bar, malice is not alleged and any inference of malice due to lack of probable cause is rebutted by the facts alleged in the Complaint. The facts alleged indicate that defendant Ruark purchased marijuana from a man named "Adkins" or "Atkins" and based upon this information, the defendants carelessly, or possibly negligently, furnished information which resulted in charges being brought against the plaintiff, Timothy Daryl Atkins.

In attempting to determine the proper elements of a § 1983 action based upon malicious prosecution, the Court also notes the elements of malicious prosecution as set out in the Restatement of Tort § 653. The Restatement provides that the initiating of criminal proceedings against another who is not guilty of the offense charged is liable to him if the proceedings were initiated without probable cause and *primarily because of a purpose other than that of bringing an offender to justice.* In the case at bar, the factual allegations certainly do not indicate that the defendants initiated the prosecution against plaintiff primarily because of a purpose other than that of bringing an offender to justice. This element would seem to be a proper prerequisite to the bringing of a § 1983 action based upon an alleged malicious prosecution.

This Court recognizes that an individual may have a cause of action under § 1983 for

a denial of due process which does not fall neatly into a category such as malicious prosecution, false arrest, assault, etc. Furthermore, negligence on the part of a state officer may provide the source of a violation of federal civil rights. *Bailey v. Harris,* 377 F.Supp. 401 (E.D.Tenn.1974). In *Monroe v. Pape,* supra, it is stated that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." See also *Green v. Cauthen,* 379 F.Supp. 361 (D.S.C.1974).

Every negligent act of a state official does not, however, give rise to a § 1983 action. In *Scott v. Dollahite,* 54 F.R.D. 430 (N.D.Miss.1972) an action was brought pursuant to § 1983 against police officers who had secured a search warrant which they erroneously believed was based upon probable cause. In sustaining defendant's Motion to Dismiss the court stated:

> "We need not consider whether the quoted information contained in [defendant's] affidavit constitutes probable cause in the eyes of this court, for even though the facts may be carelessly or partially stated, the defendant officers are not liable, under the foregoing authorities, in a § 1983 suit for their negligent mistakes and omissions in obtaining search warrants in the course of the good-faith performance of their official duties."

Similarly in *Madison v. Manter,* 441 F.2d 537 (1st Cir. 1971) a § 1983 action was brought based upon an alleged illegal search and seizure and arrest. The court initially noted that the complaint alleged that "defendants knew or should have known that they did not have . . . probable cause [for the issuance of a search warrant]." The court recognized "there is a substantial difference between a claim that the defendants knew that probable cause was lacking, and that they should have known. The one supports a finding of malice; the other simply of negligence." The court stated:

> "In sum, the complaint charges that defendants in good faith, but negligently, sought a search warrant upon an affida-

vit that they believed was sufficient . . . ; that as a result plaintiff was arrested and criminal proceedings were instituted against him . . . The question accordingly is whether negligent conduct, often sufficient to create tort liability, and hence to support section 1983 actions, (cites omitted) should not have that effect, for reasons of policy, in the case of a police officer applying for a warrant."

The court thereafter stated:

> "As a matter of general law, police officers charged with improper prosecution must also be shown to have been malicious."

In conclusion, the court recognized that a public officer, or as in this case a member of the District Attorney's staff, may be discouraged from seeking warrants or furnishing investigative information upon which charges might be based if the cost could be a suit for negligence. Therefore, the court declined to place upon policemen acting in good faith the risk of personal liability if that official makes a negligent mistake.

▇ This Court recognizes that in certain circumstances conduct amounting to gross negligence is actionable under § 1983. *Green v. Cauthen,* supra; *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970). However, the factual allegations in the case at bar do not support a finding of malice or gross negligence on the part of the defendants.

It is therefore the determination of the Court that plaintiff has failed to state a cause of action against defendants Ruark, Fouts and Lanning. The Motion to Dismiss filed on behalf of all the defendants is therefore hereby sustained.