Thomas H. DUFF

v.

William H. SHERLOCK, Secretary of Transportation of the Commonwealth of Pennsylvania, et al.

Civ. A. No. 76–1628.

United States District Court, E. D. Pennsylvania.

April 29, 1977.

Perry S. Bechtle, Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiff.

Shirley Rae Don, John T. Kalita, Jr., Frank A. Fisher, Jr., Asst. Attys. Gen., Commonwealth of Penna., Harrisburg, Pa., John M. Cleary, Philadelphia, Pa., for defendants.

MEMORANDUM

GORBEY, District Judge.

Plaintiff, in December of 1973, was appointed to the position of Superintendent of Delaware County Maintenance District of the Pennsylvania Department of Transportation. Such is a non-civil service, non-union position involving policy-making decisions as shown by the affidavits of defendants Pulakos and Harhigh, attached to defendants' motion for summary judgment or motion to dismiss. The aforementioned affidavits state that it is the policy of the Commonwealth of Pennsylvania to consider that its non-civil, non-union employees have no property right to employment by the Commonwealth. This conclusion is supported by *American Federation of State, C. & M. Emp. v. Shapp*, 443 Pa. 527, 280 A.2d 375 (1971); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Plaintiff's contention is that while a person in a policy-making "patronage" position may be discharged for no reason at all, due process of law requires that if such an employee is to be discharged for reasons which may attach a "badge of infamy" to him as "where a person's name, reputation, honor or integrity is at stake because of what the government is doing to him", notice and an opportunity to be heard are essential. *Wieman v. Updegraff*, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216 (1954); *Wisconsin v. Constantineu*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971).

The complaint alleges that on or about May 1, 1975, plaintiff was asked to meet with defendants Garzia, Pulakos and Christopher, in Harrisburg. At the meeting it is alleged that Mr. Pulakos asked the plaintiff whether he believed he had a drinking problem, and plaintiff answered in the negative. Plaintiff was then informed that Pulakos was in possession of a report based upon a secret investigation and which indicated a drinking problem. Subsequently, on or about July 13, 1975, plaintiff was informed by defendant Garzia, by telephone, that he had saved plaintiff's job but that the plaintiff would have to submit to an evaluation at the State Vocational Rehabilitation Center, or he would lose his job.

On or about July 15, 1975, plaintiff was called to the district engineer's office in St. David's, Pennsylvania, where he was told by defendant Synkonis that an appointment had been made for plaintiff with defendant Mau at the Rosemont Vocational Rehabilitation Center at nine A.M. on July 17, 1975. At this meeting defendant Mau asked plaintiff if he would speak with Mr. Dan Miller at Chit Chat Farms in Reading, Pennsylvania; plaintiff agreed to do so, and an appointment was made for July 31, 1975. Complaint, paragraphs 11 and 12.

On July 19, 1975, defendant Mau called the plaintiff, informed him that the drinking problem was larger than he realized and that plaintiff was to be hospitalized at once. Plaintiff then alleges that Mau stated he would make arrangements for the hospitalization and contact the plaintiff on July 21, 1975, but did not contact him. Complaint, paragraph 13.

In his answer to the complaint defendant Mau denied in part the allegations in paragraphs 12 and 13; he admitted the telephone call but denied that he told plaintiff he was to be hospitalized or that defendant would make arrangements for such hospitalization or that he would contact the plaintiff as alleged or at any other time. Defendant asserts that he informed plaintiff that his position was in danger by reason of the alleged alcoholism and offered to make available to plaintiff immediate, diagnostic services, and if appropriate, treatment, and requested that plaintiff telephone defendant on July 21, 1975, to convey plaintiff's decision to accept or reject the offer. He denied that he did not thereafter contact the plaintiff, supporting such denial by Exhibits 1 and 2 attached to his answer. More significantly his denials are supported by his answer to interrogatory number 7 as follows:

". . . defendant Mau in the presence of the plaintiff telephoned Richard Miller, Director of Therapy, Chit Chat Farms on July 17, 1975 for the purpose of ar-

ranging a meeting between the plaintiff and Mr. Miller at Chit Chat Farms; such meeting was set for July 31, 1975. Defendant made a second telephone call to Mr. Miller's office for the purpose of cancelling on July 21, 1975; Mr. Miller being absent, defendant Mau at that time stated without comment to his representative that Plaintiff did not wish the meeting to take place and denied having a drinking problem."

The next significant act alleged by plaintiff is that by letter dated August 6, 1975, and signed by defendant Harhigh, plaintiff was informed that effective August 8, 1975, he was being placed on thirty-day leave without pay because plaintiff's alleged drinking problem during working hours interfered with his duties; that plaintiff had refused certain counseling and/or rehabilitation services and that the thirty-day leave without pay was to be used by plaintiff to seek professional treatment. He was further advised to forward written certification to the department that he was undergoing treatment within fifteen days, or face further disciplinary action. The complaint alleges that a true and accurate copy of said letter is "attached hereto, marked Exhibit 'A' and incorporated by reference herein". No such letter was, however, attached to the complaint.

Next follows paragraph 15 in which plaintiff avers that one or more of the defendants is responsible for a newspaper article describing plaintiff's suspension for "chronic alcoholism" and inability to perform his work-related duties, which appeared on the front page of *The Delaware County Daily Times* on Monday, August 11, 1975.

In paragraph 16 it is alleged that by a letter dated September 24, 1975, signed by defendant Pulakos, plaintiff was informed that as of September 12, 1975, he was dismissed from his position for failure to comply with the conditions of the August 6th letter referred to in paragraph 14, in that he did not seek help for alcoholism and provide written certification of that fact within fifteen days.

The plaintiff in paragraph 17 of the complaint alleged that he "was never given a hearing or other reasonable opportunity to refute the charge of alcoholism or improper performance of his duties by reason of alcoholism." ·

■ Since plaintiff's position was a "patronage" policy-making one, he could as previously shown, be discharged under normal circumstances even if he was performing his duties with all efficiency; only if he is to be discharged for improper performance of duties due to alcoholism is notice and hearing essential for due process. Logically, it would appear that the first requirement would be notice and hearing to establish or refute the charge of being an alcoholic. If, after a hearing, it is shown that the person was not an alcoholic, he as previously indicated, could be discharged summarily with no hearing as to the quality of his performance. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); See also *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

■ If it is established that a person is an alcoholic, and that fact is to be published in connection with a possible discharge, it would then be necessary to provide for a hearing on the question whether the alcoholism had interfered with the proper performance of his duties. The plaintiff denies both the alcoholism and improper performance of his duties.

Plaintiff's claim for relief rests upon 42 U.S.C. §§ 1981 and 1983, with jurisdiction conferred upon the court by 28 U.S.C. §§ 1331 and 1343(3). His complaint alleges that his job was terminated as a result of a conspiracy and without due process of law.

Plaintiff cannot rest upon his bare allegations to the extent that they have been controverted by affidavit or answers to interrogatories. Rule 56, Fed.R.Civ.Proc.

Thus, plaintiff's allegation that he was never given a reasonable opportunity to refute the charge of alcoholism is negatived not only by paragraphs 8, 9, and 10 of

plaintiff's complaint, but also by defendant Mau's response to interrogatory number 1, in which he states that, pursuant to the request of Elizabeth Salayar, Personnel Director of the Pennsylvania Department of Transportation at St. David's, he fixed July 17, 1975, at 9:00 A.M. at the Rosemont District Office, as the time and place to meet the plaintiff to discuss the problem; a drinking problem which, according to paragraphs 8 and 9 of the complaint was brought to plaintiff's attention by defendant Garzia, Pulakos and Christopher on May 1, 1975.

In defendant Mau's answer to interrogatory number 7, he states that he "in the presence of the plaintiff telephoned Richard Miller, Director of Therapy, Chit Chat Farms on July 17, 1975, for the purpose of arranging a meeting between the plaintiff and Mr. Miller at Chit Chat Farms; such meeting was set for July 31, 1975. Defendant made a second telephone call to Mr. Miller's office for the purpose of cancelling the meeting on July 21, 1975; Mr. Miller being absent, defendant Mau at that time stated without comment to his representative that plaintiff did not wish the meeting to take place and denied having a drinking problem."

The purpose of the proposed conference of July 31, 1975, is explained and is significantly shown by Exhibit 1, to defendant Mau's answer, which is a letter dated July 25, 1975, written by Mau to Mrs. Salayar, Personnel Director, Pennsylvania Department of Transportation. In that letter he writes, *inter alia:*

"My counseling plan for him is to enter him into the hospital portion of the rehabilitation program at Chit Chat Farms in order that he can enjoy complete detoxification, which is also a requirement of Chit Chat Farms, and then to enter upon a regular four week treatment program. I assured him that if his story is indeed accurate in that he does not have a drinking problem this would be immediately revealed within 48 to 72 hours and I am sure that Dr. William Simpson at Chit Chat Farms would verify the fact that he does not suffer the disease of alcoholism.

It was left with him that he shall think this over during the weekend and advise me early Monday morning as to his intentions."

■ Plaintiff did not appear at Chit Chat Farms for a professional determination of the question, but was given a final opportunity to save his job when, according to paragraph 14 of plaintiff's complaint, he was informed by letter from defendant Harhigh of a thirty-day leave to enable him to seek professional treatment, since he had refused certain counseling and/or rehabilitative services. The gravity of the situation was made known to him as he was advised to forward written certification to the department that he was undergoing treatment within fifteen days, or face further disciplinary action. The non-compliance was followed by the letter of September 24, 1975, signed by defendant Pulakos, notifying him of his dismissal. If, as maintained by plaintiff in paragraph 19 of his complaint, he was not an alcoholic, ample opportunity was afforded him to establish that fact. He refused to do so and any injury he may have sustained from a civil rights standpoint must be regarded as self-inflicted.

As indicated in the affidavits of defendants Pulakos and Harhigh, at all times relevant to the complaint, the Commonwealth of Pennsylvania Department of Transportation had an established grievance procedure available to all employees regarding their wages, hours and conditions of employment, including therein termination of employment. The affidavits also establish that at no time relevant to the complaint did Mr. Duff ever attempt to exercise his rights to the grievance procedure shown in Exhibit "C" attached to the respective affidavits.

In addition to the aforementioned grievance procedure which was by-passed by plaintiff, the Commonwealth of Pennsylvania has a written Policy on Alcoholism for Employees and Procedure for the Supervisor, which policy is administered by the Governor's Office of Administration, Department of Health.

The explanation for a policy on alcoholism is well stated in the preface:

"All alcoholism programs are based on the firm belief that alcoholism is a treatable illness for which, with help, the sick person can recover and be retained as a satisfactory employee. The policy implementation plan has been designed to help supervisors in handling any problem drinkers on his staff.

Discharge, for the problem drinker, is not the best answer to a costly personnel problem. A much more effective method is forthright, oriented approach which allows the employee to face his illness by guiding him to professional and experienced lay groups for treatment and help leading to recovery.

This policy statement is intended to describe the operation of a program toward better relationships for the alcoholic within the official family of the Commonwealth."

The aforementioned policy, "the objective of which is to retain employees which are developing a drinking problem by encouraging the employee to accept treatment before he becomes unemployable" in the procedure for the supervisor, lists four steps which are to be followed after the supervisor has determined that an employee problem exists, based on deteriorating job attendance or performance, and alcohol may be a factor.

"Step 1. The initial interview at which the employee is informed of the situation as the supervisor sees it, and whether the employee admits or denies the problem 'the initial consultation is designed to leave him with the knowledge that he has some kind of problem interfering with his job performance and that he is expected to do something about it'. The employee is urged to make an immediate appointment to discuss his problem with a counselor of the State Bureau of Vocational Rehabilitation at the appropriate district office. He is asked to report back to his supervisor within one week on his plan of getting help. Also 'the employee's voluntary action at this stage enables the easiest solution of the problem and assures *confidentiality*.' The Bureau of Vocational Rehabilitation District Office will be notified of this referral both by telephone and memorandum, and a copy of such written notification will be sent to the Employee Alcoholism Education Program Office, Personnel Bureau, Office of Administration. If the employee fails to contact the Bureau of Rehabilitation Office, it will notify the employee's supervisor and the Employee Alcoholism Education Program Office within ten days from the date of the referral."

As previously shown, plaintiff did report to the District Office of the State Bureau of Rehabilitation, for defendant Mau offered Mr. Duff the opportunity to clear the charge against him by having a professional evaluation made at the state facility called Chit Chat Farms, subject to the requirements of medical diagnostic methodology, but he refused that opportunity.

Step 2 involves a second interview with the problem employee to indicate to the employee that the problem is of sufficient severity to require the employee to go to his own family physician or to a state designated physician for an examination to determine, if possible, whether a factor other than alcohol is causing the problem.

Step 3 involves implementation of the physician's recommendations and step 4 which is necessary only if there is a continuation of a problem with alcohol or if medical consultation is refused.

Plaintiff was given another opportunity to resolve the question by written letter from defendant Harhigh, dated August 6, 1975, which informed plaintiff that as of August 8, 1975, he was placed on thirty-day leave without pay, and such period was to be used by him to seek professional treatment. He was further advised that unless he forwarded written certification to the department that he was undergoing treatment within fifteen days, he would face further discipline. As a result of his noncompliance he was, by letter dated September 24, 1975, and signed by defendant Pulakos, dismissed from his position.

While there was not strict compliance with the procedures designated, particularly with step 5, which provides *inter alia,* "an unwillingness on the part of the alcoholic to improve his condition will lead to termination of employment following the second or third suspension . . .", the plaintiff could have sought relief in accordance with the grievance procedure of the Department of Transportation which, according to the affidavits of defendant Pulakos and Harhigh are "available to all employees". The important point is that what was done by the state officials afforded plaintiff the due process required by the Fourteenth Amendment, notice and the opportunity for a hearing, pursuant to the Department of Transportation's grievance procedure and the Commonwealth's policy on alcoholism for employees. "The fundamental requisite of due process is the opportunity to be heard, to be aware that a matter is pending, to make an informed choice whether to acquiesce or contest and to assert before the appropriate decision making body the reasons for such choice." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

The nature of the problem is such that a determination of alcoholism could not reasonably be decided by a hearing before laypersons; it is a problem which must be determined by professionals, particularly by medical experts which fact is clearly and positively recognized by the Commonwealth Policy on Alcoholism for Employees.

The affidavits and exhibits establish that plaintiff was given the opportunity to resolve the question, whether he was an alcoholic or not, by having a professional evaluation made at the state facility, Chit Chat Farms, or by a physician of his own choice. This he refused to do with the foreseeable consequence that he would be discharged for non-compliance with the Commonwealth policy in effect at the time he accepted state employment.

With respect to plaintiff's reference in paragraph 15 to a newspaper article relating to plaintiff's alcoholism, the denial of the truth of the charges in paragraph 19, and adverse effects resulting therefrom in paragraph 20, it can only be observed that insofar as the tort of defamation is concerned such wrong is inappropriate for an action under the Civil Rights Act. "Damages for defamation are not recoverable under the Civil Rights Act because a defamed person has not been deprived of any rights, privileges or immunities secured to him by the Constitution or laws of the United States. *Morey v. Independent School Dist.,* 312 F.Supp. 1257 (D.Minn. 1969), aff'd, 429 F.2d 428 (8th Cir. 1970); *Church v. Hamilton,* 444 F.2d 105 (3d Cir. 1971). Consequently, if as alleged by plaintiff, he is not an alcoholic, any relief for such a tort must be sought under the state judicial system.

Part V of the complaint is grounded upon 42 U.S.C. §§ 1985(3) and 1986. Section 1986 of Title 42 provides a cause of action against persons with knowledge of a § 1985 conspiracy who failed to act to prevent the conspiracy from doing harm. Consequently, an action under this section can lie only if the complaint alleges the existence of a conspiracy prohibited by § 1985(3) which reaches conspiracies to deprive a person of the equal protection of the laws, or of equal privileges and immunities under the laws.

Section 1985(3) provides a cause of action where a conspiracy is directed against a person as a member of a class; it does not provide a cause of action where the alleged conspiracy is directed toward an individual personally. *Griffin v. Breckinridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970); *Kletschka v. Driver,* 411 F.2d 436, 447 (2d Cir. 1969); *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538, 543 (7th Cir. 1975).

A violation of equal protection would be shown if the actions against plaintiff were part of a general pattern of discrimination, or were based on impermissible considerations of race or class, but plaintiff has not raised a genuine issue of fact concerning such discrimination. *Turner v. Baxley,* 354 F.Supp. 963 (D.Vermont 1972).

Thus, the sections providing causes of actions to persons injured by conspiracies to deny equal protection of the laws or equal privileges and immunities under the laws do not forbid conspiracy to deny due process. *Slegeski v. Ilg,* 395 F.Supp. 1253 (D.Conn.1975); *Atkins v. Lanning,* 415 F.Supp. 186 (N.D.Okl.1976); *Collins v. Bensinger,* 374 F.Supp. 273 (N.D.Ill.1974), *aff'd,* 506 F.2d 1405, *cert. denied,* 422 U.S. 1058, 95 S.Ct. 2683, 45 L.Ed.2d 710; *Everett v. City of Chester,* 391 F.Supp. 26 (E.D.Pa. 1975). It follows therefore that the complaint insofar as it seeks relief under §§ 1985 and 1986 must be dismissed for failure to state a claim upon which relief can be granted. As respects the remaining part of the complaint summary judgment is granted in favor of the defendants.