**Timothy Daryl ATKINS, Plaintiff-Appellant,**

v.

**John Gibson LANNING, Kenneth D. Fouts and Randall Craig Ruark, Defendants-Appellees.**

No. 76–1694.

United States Court of Appeals, Tenth Circuit.

Submitted April 15, 1977.
Decided June 8, 1977.

Michael L. Fought, Bartlesville, for appellant.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., and John G. Lanning, Dist. Atty., David W. Lee, Asst. Dist. Atty., filed a memorandum in support of summary action for appellees.

Before SETH and McWILLIAMS, Circuit Judges, and PICKETT, Senior Circuit Judge.

PER CURIAM.

This is an appeal from a judgment of the United States District Court for the Northern District of Oklahoma by which the district court denied appellant's claims brought pursuant to 42 U.S.C. §§ 1983 and 1985(3). *Atkins v. Lanning,* 415 F.Supp. 186 (N.D.Okl.1976).

Timothy Daryl Atkins claims that his civil rights were violated by four conspirators: the Washington County, Oklahoma District Attorney, a Bartlesville police officer, and two investigators on the District Attorney's staff. There is no doubt that Atkins was mistakenly arrested. The only question is whether he has stated a cause of action cognizable under the Civil Rights Act.

In the course of investigating and initiating proceedings against a large ring of marijuana distributors in Bartlesville, Oklahoma, the district attorney unfortunately caught appellant in the general dragnet. The warrant under which Atkins was arrested was concededly valid on its face, although it named one Timothy Adkins as opposed to Atkins (the person arrested following appellant's release was Edward Adkins). Some thirty-three days elapsed (with Atkins either in jail or in the state mental hospital) before the preliminary hearing, when it was established that Atkins was in fact the wrong person.

The district judge carefully considered the various claims, taking appellant's statements of fact as true, following which he granted appellees' motion for summary judgment. Specifically the district court found that appellant had abandoned his claim against the arresting officer, that the district attorney was immune under *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and that as to the investigators on the district attorney's staff there was no showing of either malice or knowledge that probable cause for the arrest of the appellant was lacking. We affirm the judgment of the district court.

Appellant has conceded that the warrant was regular on its face and there is no claim that the arrest was effected in other than a proper manner. Hence the arresting officer is entitled to the qualified immunity defense of a good faith belief that his behavior was proper. See *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Smith v. Losee,* 485 F.2d 334 (10th Cir. 1973). A police officer who arrests someone with probable cause *or a valid warrant* is not liable for false arrest simply because the innocence of the suspect is later established. *Perry v. Jones,* 506 F.2d 778 (5th Cir. 1975).

As to the liability of the district attorney, the Supreme Court in *Imbler, supra,* clarified any doubts regarding the absolute immunity of a state prosecutor acting within the scope of his jurisdiction. At page 421 of 424 U.S., at page 990 of 96 S.Ct., recognizing that malicious prosecution suits may follow dismissal of the state's case, the Supreme Court stated:

"The function of a prosecutor that most often invites common-law tort action is his decision to initiate a prosecution, as this may lead to a suit for malicious prosecution if the State's case misfires."

And at pages 427–428, 96 S.Ct. at pages 993–994:

"We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. (Footnotes omitted.)"

■ The only question then is whether the prosecutor was acting not in his quasi-judicial capacity but in his investigative or "police-related" role. See, e.g., *Hampton v. City of Chicago,* 484 F.2d 602 (7th Cir. 1973), cert. denied 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974). The facts of this case clearly demonstrate that the function being performed by the district attorney was that of preparing and presenting a case, or in other words, those judicial functions for which absolute immunity is granted. *Apton v. Wilson,* 165 U.S.App.D.C. 22, 506 F.2d 83 (1974). Some leeway is needed to perform the function of assembling the state's case. *Weathers v. Ebert,* 505 F.2d 514 (4th Cir. 1974).

While it is true that some investigative work is necessarily a prerequisite to the preparation of a prosecuting attorney's case, this does not automatically change the nature of his function to resemble that of a police officer. In the case at bar the district attorney did not act as any type of "arresting officer." *Weathers, supra.* Case law indicates that the denial of immunity to a state prosecutor would doubtless require a gross abuse of the prosecutorial function, such as deliberately concealing evidence proving a defendant's innocence. *Hilliard v. Williams,* 465 F.2d 1212 (6th Cir. 1972); *Hampton, supra.* We also note that it appears uncontested that half the delay in obtaining Atkins' release was caused by his own attorney, who secured the postponement of the preliminary hearing from September 8th to September 22nd.

■ With respect to the district attorney's staff, the law is somewhat less clear; Judge Cook found that pursuant to the limitations on executive immunity as expressed in *Scheuer v. Rhodes, supra,* that the absolute immunity covering the district attorney did not extend to the investigators on his staff and that it was therefore necessary to consider appellant's claim against them on the merits. In *Scheuer* the Supreme Court also held 416 U.S. at page 242, 94 S.Ct. at page 1689:

"Implicit in the idea that officials have some immunity—absolute or qualified—for their acts, is a recognition they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and some injury from such error than not to decide at all."

The situation here is precisely that: the district attorney neglected to verify that the proper person was named in the indictment. In *Waits v. McGowan,* 516 F.2d 203 (3rd Cir. 1975), the court of appeals held at page 207:

"An investigator directly employed by the district attorney to do a particular investigative job related to the prosecution of an accused is not the equivalent of the ordinary police officer, who is empowered by the state to initiate discretionary acts depriving others of their rights and whose many activities in the prevention of crime and enforcement of law need not be related to the judicial process."

As to the district attorney's investigators, it would hardly seem reasonable to exculpate the district attorney and to not immunize his underlings. See *Guerro v. Mulhearn,* 498 F.2d 1249 (1st Cir. 1974); *Lewis v. Brautigam,* 227 F.2d 124 (5th Cir. 1955). The cases cited by the district court involve police officers or police investigators; *Scheuer, supra,* involved the executive branch of government, not the judicial branch. The situation is different where the district attorney's staff (who are inextricably tied to the quasi-judicial process of initiating, preparing, and presenting a case) have made an error than it is when the police have carelessly or falsely arrested or injured someone.

The Supreme Court has clearly held that the Fourteenth Amendment does not extend a constitutional right to be free from injury whenever the state may be characterized as a tortfeasor because such reading of the due process clause would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the state. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Court in *Davis* also rejected "any attempt to derive from the congressional civil rights statutes a body of general federal tort law". See also *Oakley v. City of Pasadena,* 535 F.2d 503 (9th Cir. 1976).

However, even if the investigators are not covered by the quasi-judicial immunity shielding the prosecutor, appellant has failed to demonstrate a violation of his *federal* constitutional rights. Simply because under state common law the slightest interference with personal liberty might constitute a false imprisonment, it does not follow that all such invasions, however trivial or frivolous, serve to activate remedies under the due process clause of the Fourteenth Amendment. The Civil Rights Act was not enacted in order to discipline local law enforcement officials. *Wells v. Ward,* 470 F.2d 1185 (10th Cir. 1972); *Stringer v. Dilger,* 313 F.2d 536 (10th Cir. 1963). In other words, a federal constitutional question must exist not in form but in substance not merely an assertion but in essence and effect. See *Freeman v. Flake,* 448 F.2d 258 (10th Cir. 1971) and cases cited therein. Obviously not every official impropriety gives rise to a finding that due process has been denied. See *Street v. Surdyka,* 492 F.2d 368, 371 (4th Cir. 1974).

▮ Finally, the conspiracy issue (42 U.S.C. § 1985(3)), although less than clearly expressed by appellant, is adequately disposed of by the district court. *Atkins, supra,* pp. 187–188. There must be some racial or class based invidiously discriminatory animus behind conspirators' actions, i.e., the conspiracy must aim at a deprivation of the equal enjoyment of rights secured by the law to all in order to state a claim under § 1985. See *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338; *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538 (7th Cir. 1975); see also *Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975).

When this case was docketed in this court, the parties were notified that the appeal would be decided on the original record without oral argument. The parties were invited to submit memoranda in support of their respective positions. Only appellees have done so. We have thoroughly reviewed the files and records in this case and are convinced that the opinion of the district court should be affirmed.

The mandate shall issue forthwith.